(281 P.3d 529)
Nos. 103,22■
103,225

STATE OF KANSAS, *Appellee*, v. BRODRICK N. WEST, *Appellant*.

Opinion filed January 7, 2011.

*Randall L. Hodgkinson* and *Rachel Pickering*, of Kansas Appellate Defender Office, for appellant.

*Don L. Scott*, county attorney, and *Steve Six*, attorney general, for appellee.

Before MCANANY, P.J., ATCHESON, J., and LARSON, S.J.

*Per Curiam*: This prosecution of Brodrick West on a series of drug charges returns to our court on a second appeal. West was charged, tried, convicted, and sentenced in separate cases that have been consolidated for proceedings here and, at various times, in

the trial court. In his first appeal, West successfully challenged several of the convictions but raised other arguments that were considered and found to be without merit. The case was returned for resentencing. West's current appeal raises only the same arguments that this court found wanting in his first appeal. The well-settled principle of law-of-the-case forecloses West from a second go-round here. We, therefore, affirm.

We need not detail the criminal charges against West or provide the long version of this litigation. In one case, West was charged in Seward County with various counts of selling cocaine within 1,000 feet of a school, conspiracy to sell cocaine, use of a telephone to aid in the sale, and the failure to acquire drug tax stamps related to two drug transactions in January 2007. In the other case, again in Seward County, West faced one count each for sale near a school, conspiracy, use of a telephone, and no tax stamp in a February 2007 drug deal. West went to trial, and the jury hearing both cases convicted him of all the charges. Judge Tom R. Smith sentenced West to 562 months in prison by running the time on the principal convictions and some of the lesser convictions consecutively.

West then filed his first appeal with this court, challenging numerous aspects of the charges against him, the proceedings at trial, and the sentence. *State v. West*, Nos. 99,063, 99,067, unpublished opinion filed November 7, 2008, *rev. denied* 289 Kan. 1285 (2009). This court held that West was properly convicted of sale of cocaine, but not within 1,000 feet of a school, since there was insufficient evidence to show the building in question was actively being used as a school within the meaning of the governing statutes. This court also found there was only one conspiracy to sell or distribute cocaine, not two. That is, all of the sales took place as part of a single conspiracy or agreement to distribute illegal drugs. And the court set aside two of the use-of-telephone convictions and one of the tax-stamp convictions.

But the first time around, the Court of Appeals also considered and rejected West's arguments that the complaints failed to inform him that he faced sentencing for severity level 1 offenses. The court also denied him relief on the claim that his two past convictions

for drug trafficking should not have been used to place the charges for sale in these cases at severity level 1. This court then remanded so that West could be resentenced. As is customary, the opinion in the first appeal made no suggestion or recommendation as to what an appropriate sentence might be. Within the framework of the sentencing statutes, that typically is a matter entrusted to the trial judge's discretion. *State v. Johnson,* 286 Kan. 824, 851, 190 P.3d 207 (2008) (K.S.A. 21-4704 "grants a judge discretion to sentence a criminal defendant to any term within the presumptive grid block, as determined by the conviction and the defendant's criminal history.").

By the time West appeared for resentencing on June 30, 2009, just over 2 years had passed since the original sentencing. Judge Smith had retired. The task of resentencing West fell to Judge Clint Peterson. Judge Peterson conducted a separate sentencing hearing in each case, although they were handled back-to-back, essentially as one proceeding. At the outset of the first hearing, after receiving the appearances of counsel, Judge Peterson stated: "The Court of Appeals' opinion is quite specific so I do not believe there is any discretion that I hold regarding what has to happen today, therefore, I won't ask for comment from counsel." Judge Peterson declined to hear argument from the prosecutor or counsel for West. West was not given the opportunity to make a statement to the court. In his concurring opinion, Judge Atcheson details his concern about the manner in which the resentencing was handled. But West has raised no issue on appeal regarding the inability of his counsel to present argument at resentencing or his inability to speak to the judge directly during that proceeding.

In some cases, the defendant raised an issue before the trial court but failed to raise it on appeal. For example, in *State v. Adams,* 283 Kan. 365, 367, 153 P.3d 512 (2007), the court noted the rule that "[a]ppellate courts do not ordinarily consider issues that are not raised by the parties." However, the court considered the defendant's speedy trial issue because the issue had been raised before the district court, even though not raised on appeal. In other cases, the defendant failed to raise the issue before the district court but raised it for the first time on appeal. For example, in

*State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007), the court noted the general rule that "constitutional grounds for reversal asserted for the first time on appeal are not properly preserved for appellate review" (citing cases). However, the court applied an exception to the rule to consider the defendant's constitutional claim raised for the first time on appeal. In the present case, however, West neither raised before the district court any issue regarding the manner of his resentencing, nor has he raised the issue on appeal. Under these circumstances, we need not and do not reach out to decide this issue which West has not raised either before the district court or before us.

Judge Peterson imposed a sentence of 562 months in prison on West—the same as Judge Smith had. Based on West's two previous drug convictions, the sale charge in each of the current cases is a severity level 1 offense. West also has three convictions for person felonies. As a result, he falls in the highest offender category on the drug sentencing grid. The presumptive sentence for a defendant with that criminal background is 184 to 204 months on a severity level 1 drug offense with a standard term of 194 months. In the first case, Judge Peterson imposed concurrent terms on some of the lesser offenses, but he made them consecutive to a maximum sentence of 204 months on the sale conviction, yielding an overall sentence of 358 months. In the second case, he imposed a maximum sentence of 204 months on the sale conviction to be served consecutive to the sentence in the other case. The total sentence is a little less than 47 years.

West has again timely appealed. He does not challenge the sentence in each case or the overall sentence as being outside what is permitted based on the sentencing statutes. We agree that the sentences, while quite lengthy, fall within the range contemplated under the law. A sentencing judge, however, could have imposed a markedly shorter period of incarceration and remained within that permissible range.

On appeal, West does argue that the sale convictions should have been treated as severity level 2 offenses, rather than severity level 1 offenses. This is the same issue West asserted unsuccessfully in his first appeal. And, as he acknowledges, the rule of law-of-the-

case typically bars repetitive arguments on successive appeals in the same action. *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998). In short, an argument once made to and resolved by an appellate court becomes "the law" in that case and generally cannot be challenged in a second appeal. 263 Kan. 629, Syl. ¶ 3 ("When a second appeal is brought . . . in the same case, the first decision is the settled law of the case on all questions involved in the first appeal, and reconsideration will not normally be given to such questions."). The doctrine "promotes the finality and the efficiency of the judicial process" by eliminating "indefinite relitigation of the same issue" in an ongoing case. 263 Kan. 629, Syl. ¶ 2. In that way, law-of-the-case promotes the same goals as res judicata except that it operates within the life of a single case rather than across successive cases.

While an appellate court may disregard the law-of-the-case doctrine to correct a manifest injustice or a clear error of substantial importance, a decision to jettison finality should not be lightly made and, then, only in a truly exceptional circumstance. See 263 Kan. 629, Syl. ¶ 1 (law-of-the-case does not impose an irrevocable barrier to reconsideration of an issue). We find no compelling reason here that would suggest we deviate from applying law-of-the-case principles. West has already had the opportunity to litigate and, in fact, has fully aired this issue; and this court, in turn, has already thoroughly reviewed and addressed his arguments. We decline the invitation to reconsider what has already been decided on the earlier appeal in this matter.

Because law-of-the-case governs here, each of the arguments West advances in this appeal is foreclosed. We, therefore, affirm.

\* \* \*

ATCHESON, J., concurring: I join in the panel opinion and its disposition of this appeal. But I pause to comment on the way in which the resentencing was conducted and, in particular, the failure of Judge Peterson to permit counsel to address the matter of punishment. Because West did not expressly raise that issue on appeal, I agree that we should refrain from doing so on our own. There may be reasons that are not apparent from the record fa-

voring the omission of the issue from this appeal. Nonetheless, the way in which the resentencing was conducted implicated and compromised West's constitutional rights to representation by counsel and to due process under the Sixth and Fourteenth Amendments to the United States Constitution.

The Sixth Amendment, as applied to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to be represented at all "critical stages" in a prosecution. *Iowa v. Tovar*, 541 U.S. 77, 80, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004); *State v. Jones*, 290 Kan. 373, 379, 228 P.3d 394 (2010) ("The right to counsel applies to all 'critical stages' of the criminal process of an accused who faces incarceration."). The Kansas Constitution Bill of Rights, § 10, affords comparable protection. Sentencing is one of those critical stages. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) ("Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel."); *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967). See *State v. Easterling*, 289 Kan. 470, 476, 213 P.3d 418 (2009) (finding sentencing to be a critical stage in a criminal prosecution mandating due process protections for the defendant); *State v. Bristor*, 236 Kan. 313, 317-18, 691 P.2d 1 (1984) (citing *Mempa* with favor for the proposition that sentencing is a critical stage of a criminal proceeding to which the right to counsel applies). West, then, had a Sixth Amendment right to counsel at his resentencing.

The Due Process Clause of the Fourteenth Amendment also requires that a person be afforded a right to be heard in a meaningful way before being deprived of "life, liberty, or property." U.S. Const. amend. XIV, sec. 1; *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a 'meaningful time and in a meaningful manner.' "); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be pre-

ceded by notice and opportunity for hearing appropriate to the nature of the case."). The Kansas courts similarly define due process rights. *State v. King*, 288 Kan. 333, 354, 204 P.3d 585 (2009). During a critical stage of a criminal prosecution, the Fourteenth Amendment right to due process and the Sixth Amendment right to counsel complement each other and overlap substantially, if not entirely. I have no occasion to explore the constitutional distinctions, if any, today.

This case illustrates, however, just how critical a stage sentencing may be in a criminal prosecution. From an actuarial standpoint, West has received what amounts to a life sentence. Given his age, West probably will die in less than 47 years.

Although West had counsel present at the resentencing, that in and of itself fails to satisfy his constitutional rights. Judge Peterson's preemptive strike at the outset of the sentencing hearings to the effect that he had no need to hear from counsel obliterated that right just as surely as if West had no lawyer at all. Judicially enforced silence can never pass for a lawyer's advocacy. The United States Supreme Court "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the [criminal] proceeding." *United States v. Cronic*, 466 U.S. 648, 659 n.25, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). This would be such a case if West had chosen to assert a constitutional violation on appeal.

From a practical standpoint, however, there also would seem to be prejudice. Judge Peterson was not the judicial officer who originally sentenced West and, thus, may not have been aware of what happened at that hearing. More significantly, perhaps, Judge Peterson cut himself off from any information either the prosecution or West's counsel might have offered about what West had done—good or bad—in the 2 years between the first sentencing and his appearance for resentencing. That input might have influenced Judge Peterson's sentencing decision and, in any event, would have rendered it a more fully informed decision. Judge Peterson might have chosen to alter the original sentence. He had the discretion to do so.

In that respect, I am puzzled by Judge Peterson's comment to counsel that the appellate mandate stripped him of the authority to consider anew an appropriate punishment for West. The decision and mandate returned the case for resentencing, not imposition of the *same* sentence.

Apart from having counsel speak, a criminal defendant has the right to address a court directly on the matter of a just punishment. That right of allocution has been embedded in the Kansas Code of Criminal Procedure. K.S.A. 22-3422 (The court must ask a defendant personally before sentencing if he or she knows of any reason that judgment "should not be rendered."); K.S.A. 22-3424(e) (The court must "afford counsel an opportunity to speak on behalf of the defendant" and "ask . . . if the defendant wishes to make a statement . . . and to present evidence in mitigation of punishment."). Allocution, however, lacks a constitutional dimension and is purely a statutory right. See *State v. Mebane*, 278 Kan. 131, 133-34, 91 P.3d 1175 (2004) (characterizing allocution as set out in K.S.A. 22-3424(e) as a "statutory right" and making no mention of any sort of constitutional analog); *State v. Caruthers*, 22 Kan. App. 2d 910, 911, 924 P.2d 1278 (1996) (rejecting argument that the constitutional right to due process mandated allocution in probation revocation proceedings). In *State v. Webb*, 242 Kan. 519, 522-29, 748 P.2d 875 (1988), the Kansas Supreme Court described in detail the origins of allocution and its history in the State's courts. The court suggested that any constitutional basis or need for allocution has been supplanted by the broad Sixth Amendment right to counsel in criminal proceedings recognized over the course of the last half century. 242 Kan. at 523-24.

Nonetheless, allocution continues to serve useful and important purposes. As the United States Supreme Court has recognized, a criminal defendant may speak with "halting eloquence" that resonates more powerfully than the argument of "[t]he most persuasive counsel." *United States v. Green*, 365 U.S. 301, 304, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961). A defendant might offer a genuine expression of remorse and hope for redemption worthy of some mitigation of punishment. Another defendant might equivocate about his or her personal responsibility and shift blame to others

in a way that would suggest little reason for leniency to the sentencing court. Allocution also enhances the actual and perceived fairness of the process. A defendant given the opportunity to address the court likely will look at the proceeding as having some semblance of evenhandedness whether he or she actually takes the opportunity or not. By depriving West of allocution at the resentencing, Judge Peterson compromised those purposes and benefits. Finally, simply as a matter of fairness, a court ought to be able to spare the time to listen to what a criminal defendant might have to say at sentencing, especially when that defendant effectively may spend the rest of his or her life in prison.