NOT DESIGNATED FOR PUBLICATION

No. 124,726

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PETTIX MCMILLAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed January 13, 2023. Sentence vacated and case remanded with directions.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

PER CURIAM: Pettix McMillan was convicted by a jury of three counts of attempted murder and sentenced to 1,068 months in prison. In sentencing McMillan, the district court denied his request for a downward durational departure. McMillan appealed, challenging his convictions and criminal history score. Following his direct appeal, his case was remanded to the district court for a limited evidentiary hearing on whether his statutory speedy trial rights were denied at trial. Following this hearing and the district court's denial of his speedy trial rights claim, McMillan appealed again. As part of this second direct appeal, McMillan raised a new claim that his sentence was

illegal. This court agreed and remanded his case for resentencing. At resentencing, McMillan again moved for a durational departure. The district court refused to consider this motion, concluding that it lacked jurisdiction to consider a departure sentence, and sentenced McMillan to 1,029 months in prison. McMillan now appeals a third time, arguing that the district court erred in concluding it lacked jurisdiction to consider his departure motion and in modifying his sentence on count two.

Because the district court erred in resentencing McMillan, both in concluding it lacked jurisdiction to consider his departure motion and in modifying his sentence on count two, we vacate his sentences and remand for resentencing.

FACTS

McMillan was convicted by a jury of three counts of attempted first-degree murder, a severity level 1 person felony, in connection with the shootings of his then-wife and two sons. The State sought to present aggravating factors to the jury to support an upward departure on the two counts corresponding with the attempted murder of his sons. The jury was instructed on these proposed factors and found their existence. McMillan, for his part, moved for a downward departure sentence.

The district court denied McMillan's motion for a downward departure and imposed an upward departure sentence based on the aggravating factors found by the jury, sentencing McMillan to 1,068 months in prison.

McMillan filed a direct appeal, raising two claims about his statutory right to a speedy trial and a challenge to the criminal history category the district court used to determine his sentence. Another panel of this court affirmed McMillan's convictions and sentence. *State v. McMillan*, No. 115,229, 2017 WL 3447000, at *7 (Kan. App. 2017) (unpublished opinion) (*McMillan I*). Our Supreme Court, however, subsequently

2

remanded the case to this court for reconsideration of one of his speedy trial right claims. This court, in turn, remanded the case to the district court for an evidentiary hearing on McMillan's claim.

After conducting the evidentiary hearing, the district court denied McMillan's claim. McMillan appealed once again from this decision, challenging the district court's ruling. He also alleged, for the first time, that his sentence was illegal. Another panel of this court affirmed the district court's denial of McMillan's speedy trial claim but agreed McMillan's sentence was illegal, as the maximum prison sentence the district court could have imposed under the sentencing guidelines was 1,029 months. The panel therefore vacated McMillan's sentences and remanded with directions to resentence McMillan. *State v. McMillan*, No. 115,229, 2021 WL 642297, at *8 (Kan. App. 2021) (unpublished opinion), *rev. denied* 313 Kan. 1044 (2021) (*McMillan II*).

On remand for resentencing, McMillan moved again for a downward durational departure, filing an Addendum to Departure Motion adopting the arguments made in his original departure motion and offering additional mitigating factors based on his productive behavior and good disciplinary record while incarcerated.

The district court refused to consider McMillan's departure motion, concluding the opinion in *McMillan II* limited it to sentencing McMillan as the original sentencing judge intended—that is, to impose the longest term of imprisonment permitted under the guidelines. As the district court explained, it did not have "jurisdiction under this remand to reconsider arguments regarding sentencing" and was confined to merely correcting an arithmetic error.

The district court then sentenced McMillan to 1,029 months in prison. In doing so, it resentenced McMillan on all three counts, designating count two as the primary offense, imposing an upward departure sentence on counts two and three based on the

aggravating factors found by the jury, and running the three counts consecutive to one another.

McMillan timely appealed.

ANALYSIS

*Did the district court err in concluding it lacked jurisdiction to consider McMillan's durational departure motion on remand for resentencing?*

On appeal, McMillan argues the district court erred in concluding it lacked jurisdiction to consider his departure motion. The State argues the mandate rule precluded the district court from considering McMillan's requested departure.

The interpretation of sentencing statutes is a question of law over which this court exercises unlimited review. Whether a district court has complied with the mandate of an appellate court is also a question of law. *State v. Guder*, 293 Kan. 763, 765, 267 P.3d 751 (2012). Jurisdiction is likewise a question of law and thus subject to the same standard of review. See *State v. Harris*, 262 Kan. 778, 780, 942 P.2d 31 (1997).

On appeal, McMillan claims the district court erred in concluding it lacked jurisdiction to consider his motion for a durational departure. He argues the mandate in *McMillan II* only reflected the maximum possible sentence he could receive and did not preclude the district court from considering his departure motion in resentencing him.

The State argues the district court did not err, as the language of the remand order dictated that the district court did not have jurisdiction to reconsider McMillan's departure motion on remand. The State claims the panel in *McMillan II* limited the district court, under the mandate rule, to sentencing McMillan "'consistent with [that] opinion,'" i.e., to a sentence of 1,029 months in prison. The State argues the mandate rule

4

also precluded the district court from considering McMillan's departure motion due to his intentional choice to not appeal the district court's denial of his first departure motion.

*Whether the district court had jurisdiction to consider McMillan's departure motion*

In support of the contention that the district court had jurisdiction to consider his departure motion, McMillan first notes the Kansas Supreme Court has held that where a motion to modify a sentence was denied by a district court but never appealed, the district court retained jurisdiction to consider the motion. See *Harris*, 262 Kan. at 780-81. He argues that departure motions should be treated similarly. And since he did not appeal the district court's denial of his original departure motion, he claims the district court was not barred from considering his departure motion at resentencing.

While the State does not specifically respond to McMillan's arguments on *Harris*, an analysis of that opinion shows McMillan's reliance on it is unfounded. As stated, *Harris* involved a motion for sentence modification, not a motion for a sentencing departure. The question on appeal was whether the district court had jurisdiction to decide the defendant's post-appeal motion to modify sentence—not whether the district court retained jurisdiction to address sentencing issues not challenged as part of a defendant's direct appeal on remand for *resentencing*. And the resolution of this issue turned on the court's interpretation of the statutory language authorizing motions to modify.

McMillan next argues that, if a motion for modification and a motion for durational departure are distinguishable, *State v. Blackmon*, 285 Kan. 719, 720-21, 176 P.3d 160 (2008), provides more direct support for his position. He notes that in that case, the court held the district court could reconsider a departure motion on remand for

5

resencing. Once again, a review of that case reveals it is also not on all fours with McMillan's situation.

In *Blackmon*, the district court granted the defendant a downward durational departure at sentencing based on its belief that the facts of the case did not rise to the level of manifest indifference to the value of human life to justify the defendant's conviction for second-degree murder. On appeal, another panel of this court reversed, finding that a sentencing judge's disagreement with the jury verdict is not a substantial and compelling reason that can justify a departure. Our Supreme Court affirmed this ruling, as the purpose of the departure procedure is not to substitute the district court's judgment for the jury's verdict. 285 Kan. at 728. And because a sentencing court must state the reasons for departure on the record and the district court referenced no other basis for departure, the court declined Blackmon's invitation to glean other departure factors from the evidence or the sentencing court's statements in granting the departure. 285 Kan. at 729-30.

Given these conclusions, the court then turned to whether upon remand it was appropriate for the district court to clarify the reasons for departure or whether the initial failure doomed Blackmon's departure motion. The court noted that Kansas courts had previously allowed remand for clarification of departure reasons on upward departures and that it could discern no reason why the same policy should not apply to downward departures. Since the limited record available on appeal suggested the sentencing court may have had other reasons for departure it did not state, the appropriate remedy was to vacate the sentence and remand for resentencing where the district court could impose a departure sentence, if it determined there were reasons justifying a departure. 285 Kan. at 731-32.

The State argues that *Blackmon* is distinguishable from this case. It claims that, unlike *Blackmon*, this is not a case in which the district court granted a departure but

6

failed to articulate valid reasons for doing so. Rather, the State argues, the district court imposed a sentence that was illegal because it "did not conform to the sentencing guidelines."

Although there are important distinguishing features between the facts here and *Blackmon*, the State's description is not completely accurate. While the statement that McMillan's sentence was illegal because it did not conform to the sentencing guidelines is technically correct, it fails to identify the exact reason his sentence was illegal.

In its opinion vacating McMillan's sentence and remanding his case for resentencing, the *McMillan II* panel did not specifically identify the error in McMillan's sentence. Yet a review of the record shows that, like *Blackmon*, the district court here erred by imposing a departure that was not supported by valid factual findings.

In originally sentencing McMillan, the district court imposed an upward departure sentence on all three counts. But the State had only requested findings on, and the jury only found, the existence of aggravating factors supporting an upward departure on counts two and three—the attempted murders of his two sons. While it did not specifically identify this as the error in pronouncing his sentence illegal, this court confirmed that McMillan could only receive upward departure sentences on two of his three convictions—those counts on which the jury found aggravating circumstances. Given this fact, the maximum possible sentence McMillan could have been given was 1,029 months, rather than the 1,068 months the district court sentenced him to.

As *Blackmon* suggests, Kansas courts have typically allowed district courts to reconsider whether to impose a departure sentence on remand for resentencing following reversal of a previously imposed departure sentence on appeal.

But the facts of this case are still somewhat distinguishable from those in *Blackmon* and the other cases cited by the court there. In each of those cases, the record reflected that the district court may have had reasons supporting a departure but did not state them on the record. Here, in contrast, the record does not show the district court believed that reasons existed to support the departure on count one but failed to state them. Rather, the district court appears to have simply erred in applying the aggravating factors the jury found on the other counts. The question here is not whether the district court could reconsider on remand the departure it erroneously granted on remand, but whether the district court could consider a departure in the other direction.

Given these differences, it does not appear that *Blackmon* controls the question presented by this case. That said, the differences between *Blackmon* and this case need not lead to the conclusion that the district court did not have jurisdiction to consider a downward departure on remand for resentencing. It does not appear from the court's discussion of the issues in *Blackmon* that the possible existence of factors supporting the departure was the reason jurisdiction existed in that case for the district court to reconsider the departure on remand. If anything, the fact that district courts typically have jurisdiction to reconsider whether to impose a departure sentence on remand seems to support McMillan's position. After all, the statute which authorizes departure sentences and provides the procedure district courts must follow in imposing departures does not differentiate between upward and downward departures. See K.S.A. 2021 Supp. 21-6815.

If a district court has jurisdiction to consider whether to impose an upward departure, it seemingly would also have jurisdiction to consider whether to consider a downward departure, since the revised Kansas Sentencing Guidelines Act (KSGA) does not lay out a separate process for considering the two. Rather, in determining whether to impose a departure sentence, a sentencing judge is merely instructed to consider whether substantial and compelling reasons exist justifying a departure and given a nonexclusive list of mitigating and aggravating factors to consider. See K.S.A. 2021 Supp. 21-6815. As

8

a result, the KSGA contemplates that both mitigating and aggravating factors should be considered whenever a district court decides whether to impose a departure sentence. See *State v. Jolly*, 301 Kan. 313, 321, 342 P.3d 935 (2015).

Turning to other cases for insight, the source of a district court's jurisdiction to resentence a defendant on remand comes from the KSGA. As a result of the KSGA's passage, the Kansas Supreme Court has held that "a district court has no authority to modify a sentence unless plain statutory language provides such authority." *Guder*, 293 Kan. at 766. In *Guder*, the court analyzed the KSGA and determined the 1992 amendments deprived district courts of the jurisdiction to modify sentences on remand for resentencing "except to correct arithmetic or clerical errors, to consider or reconsider departures from presumptive sentences, or to modify sentences by reinstating previously revoked probations." 293 Kan. at 766. The court also determined the Legislature explicitly addressed remands following reversal in K.S.A. 21-4720(b)(5). That statute, now codified at K.S.A. 2021 Supp. 21-6819(b)(5), states that if a conviction of the primary crime is reversed on appeal, the sentencing court is to follow all the KSGA provisions concerning sentencing in multiple conviction cases. 293 Kan. at 766.

In resentencing a defendant after a remand, a district court must correct the sentence so that it becomes compliant with the KSGA. *State v. Jamerson*, 309 Kan. 211, 216, 433 P.3d 698 (2019). This means the district court necessarily must apply the KSGA provisions governing the terms of grid sentences to determine the sentence's length. "In doing so, the court has to exercise its independent judgment—within the limitations imposed by the KSGA—to determine the appropriate sentence." *Jamerson*, 309 Kan. at 218. The KSGA also permits a district court resentencing a defendant's nonbase sentences on remand to determine anew whether the terms of imprisonment for those convictions should run consecutive to a defendant's other sentences. 309 Kan. at 218. Finally, a district court is also statutorily required to allow defense counsel to address the court and to provide the defendant the opportunity to make a statement on his own behalf

9

and to present any evidence in mitigation of punishment. K.S.A. 2021 Supp. 22-3424(e); see also *State v. Salary*, 309 Kan. 479, 487-88, 437 P.3d 953 (2019) (statutory right to allocution applies on remand for resentencing).

Applying these principles to the question at hand, we find the KSGA authorized the district court here to consider whether a departure was justified as part of its resentencing of McMillan. As *Jamerson* instructs, the district court on remand should resentence a defendant in compliance with the KSGA. This means it must apply K.S.A. 2021 Supp. 21-6815 as its starting point in resentencing McMillan. And under that statute, the requirement that a district court impose the presumptive sentence in a case is intertwined with its authority to grant a departure. A district court must impose the presumptive sentence *unless* substantial and compelling reasons justify a departure sentence. Because the requirement to consider if substantial and compelling reasons supporting a departure exist is in the same provision as the requirement to impose the presumptive sentence under the guidelines, we find a district court can consider a departure whenever it is sentencing a defendant—including on remand for resentencing.

Furthermore, *Jamerson* and *Salary* reveal that when a district court resentences a defendant on remand, it necessarily must decide whether aggravating or mitigating factors are present. Not only does a defendant have a statutory right to allocution, but a district court must decide whether to apply the mitigated, middle, or aggravated sentence in the applicable sentencing grid box. And if resentencing on a defendant's nonbase sentence in a multiple convictions case, it must decide whether to run the sentence consecutive to the defendant's other sentences. There does not appear to be any reason why a district court would be restricted from determining that the mitigating factors are substantial and compelling enough to justify a downward departure from the presumptive sentence, in accordance with K.S.A. 2021 Supp. 21-6815.

Thus, we find the district court had jurisdiction to consider McMillan's motion for a downward departure.

*The mandate rule*

The State claims the mandate rule controls the outcome here. The State argues the language of the panel's opinion did not authorize the district court to do anything but sentence McMillan to a term of 1,029 months in prison. The State further argues that McMillan's failure to challenge the denial of his original departure motion on appeal operates as another basis for finding the mandate rule precluded the district court from considering his departure motion.

Under the mandate rule, a district court is duty-bound to follow an appellate court's mandate on remand. See K.S.A. 60-2106(c); K.S.A. 20-108.

> "'The [mandate] rule applies to prevent district court action on remand only when an issue has already been finally settled by earlier proceedings in a case, including issuance of the appellate mandate. If a final settlement of an issue has occurred, the district judge is not free to expand upon or revise that history. The mandate rule does not, however, prevent a district judge from doing whatever else is necessary to dispose of a case. This means the district judge must not only do as the mandate directs; he or she must also do what is needed to settle other outstanding issues that must be decided to complete district court work on the case.'" *State v. Smith*, 312 Kan. 876, 884, 482 P.3d 586 (2021) (quoting *State v. Soto*, 310 Kan. 242, 256, 445 P.3d 1161 [2019]).

In other words, under the mandate rule, a district court may address those issues necessary to the resolution of the case left open by the appellate court's mandate. *Smith*, 312 Kan. at 885.

The State's arguments about the mandate rule seem largely duplicative of its arguments about jurisdiction—in both cases, the State essentially argues that because the district court was mandated to resentence McMillan "'consistent with [that] opinion'" it had no discretion to do anything but sentence McMillan to a term of 1,029 months. While the panel did use that phrase in its opinion, it did not remand *with directions*, including any direction as to a specific sentence. In discussing a possible sentence length of 1,029 months, the panel was merely commenting that this would be "the maximum permissible term" to which McMillan could be sentenced—not directing the district court to sentence him as such. *McMillan II*, 2021 WL 642297, at *7. The context for this comment was the panel's discussion of the district court's intention at sentencing, which it found was "to impose the longest term of imprisonment permitted under the guidelines." *McMillan II*, 2021 WL 642297, at *8. We do not read the opinion to constrain the district court's discretion by ordering a specific sentence.

Even so, as explained above, the district court's task in resentencing McMillan was to exercise its independent judgment—within the limitations imposed by the KSGA—to determine the appropriate sentence under the guidelines. This included considering aggravating and mitigating factors to establish whether a departure sentence was warranted or, if a departure was not warranted, what sentence within the applicable sentencing grid box to apply. Thus, to put it in terms of the mandate rule, consideration of a departure sentence was within those issues necessary to the resolution of the case left open by the appellate court's mandate.

As explained, the district court was required, at the very least, to give McMillan a chance for allocution and consider any mitigating factors he offered in determining whether to apply the low, middle, or high number in the applicable sentencing grid box. And McMillan's motion for a durational departure included new mitigating factors, along with incorporating those in his original motion. See *State v. West*, 46 Kan. App. 2d 732, 738-39, 281 P.3d 529 (2011) (Atcheson, J., concurring) (failure to allow allocution on

12

remand for resentencing potentially prejudiced defendant by preventing sentencing judge from learning of any information on defendant's conduct in intervening period that could influence sentencing decision). Accordingly, we find the district court should have allowed McMillan to present his arguments in support of his departure motion upon remand.

*Did the district court impermissibly modify McMillan's sentence in resentencing him?*

Along with considering the issues raised by the parties in their initial briefs, this panel ordered the parties to submit supplemental briefing "on the question of whether the district court had authority to modify McMillan's sentence on count two in resentencing him."

In response to the court's order, McMillan argues the district court only had authority on remand to modify the illegal portions of his original sentence and that his original sentence was only illegal as to count one. He thus claims the district court lacked the authority to modify his sentence on count two in resentencing him.

The State counters by first arguing it is unclear that the district court modified McMillan's sentence on count two in resentencing him. It claims the journal entry of McMillan's original sentencing hearing does not accurately reflect the district court's oral pronouncement of the sentence and notes that here, the oral pronouncement controls. And it argues the oral pronouncement of McMillan's sentence could be interpreted as imposing the same sentence on count two as the district court imposed in resentencing him—in which case, no modification occurred.

Alternatively, the State argues that if the district court did modify count two on resentencing, it could do so, as the sentence the district court originally pronounced on count two was ambiguous as to the time and manner in which it was to be served.

13

While McMillan did not raise this issue before the district court, courts have a statutory duty to correct an illegal sentence at any time. As a result, an illegal sentence issue may be considered for the first time on appeal. K.S.A. 2021 Supp. 22-3504; *State v. Juiliano*, 315 Kan. 76, 79, 504 P.3d 399 (2022). And an illegal sentence can be addressed by an appellate court, sua sponte. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

A court's authority to impose a sentence is statutory. Thus, arguments attacking a court's authority to impose sentence involves the interpretation of statutes—a question of law over which this court has unlimited review. *State v. Kessler*, 276 Kan. 202, 215, 73 P.3d 761 (2003).

Similarly, whether a sentence is illegal under K.S.A. 2021 Supp. 22-3504 is a question of law over which an appellate court's review is unlimited. *State v. Gracey*, 288 Kan. 252, 261, 200 P.3d 1275 (2009).

*Supplemental facts*

To analyze the parties' arguments, a more in-depth description of McMillan's sentencing is first required.

At McMillan's original sentencing hearing, the State requested that McMillan receive the high number in the appropriate sentencing guideline grid box for each count—267 months as to count one and 165 months as to counts two and three—with the three counts running consecutive. The State explained that although this would bring his total sentence to 597 months' imprisonment, the district court would normally be limited to imposing a maximum sentence of 534 months—twice the aggravated number on the primary sentence. But because the jury found aggravating factors supporting a durational

14

departure existed, the State requested the district court sentence McMillan "to twice the possible maximum sentence in this case which would be 1,068 months."

After the State made its arguments in opposition to McMillan's requested downward departure, the district court asked the State for some clarification about the law. The district court asked, "Generally speaking, when there are multiple counts the most someone can be sentenced to is double the high number in the first primary count[?]" The State responded yes.

The following exchange then occurred:

"THE COURT: Okay. You're wanting to use the aggravating factors that the jury decided . . . as the basis for doubling that figure of 534 to 1,068, is that—

"[THE STATE]: Yes, sir. We gave notice to the defendant pursuant to [K.S.A.] 21-6815 at the time of charging of the specific factors that we sent back to the jury. We utilized the procedure outlined in [K.S.A.] 21-6817(a)(7) and the jury came to their unanimous finding. The Court's authorized through [K.S.A.] 21-6818(b)(2) to double that maximum number and that's what we're asking you to do."

And after denying McMillan's motion for a downward departure, the district court asked the State how it should allocate the 1,068 months between the three counts.

"[THE STATE]: The way that you would do it is an upward departure on the maximum number on the aggravated; that's how you would do it. So you are doubling that Count 1 and then you are permitted, under [K.S.A. 21-]6818, to then double that number. You would give a sentence of the aggravated number on each count and then pronounce the doubling after you find—

"THE COURT: Okay. And that will be the Order of the Court for a total sentence of 1,068 months."

15

The district court made no further oral pronouncement as to McMillan's sentence, other than clarifying that it was relying on the departure factors found by the jury, finding that the felonies were committed with a deadly weapon, and informing McMillan of his postrelease registration requirements.

The journal entry of McMillan's original sentencing hearing states the district court designated count one as the primary offense and sentenced McMillan to the aggravated number in the applicable grid box for each count. The district court then imposed an upward durational departure to double the presumptive sentence on all three counts, with the sentences running consecutively. This resulted in a sentence of 534 months on count one, 330 months on count two, and 330 months on count three. The district court then applied K.S.A. 2013 Supp. 21-6819(c)(3) to cap the total term of imprisonment at 1,068 months—twice the aggravated departure sentence granted on count one.

At resentencing, the district court designated count two as the primary count and imposed an upward durational departure on counts two and three, sentencing McMillan to 534 months on count two, 330 months on count three, and 165 months on count one. It ran these sentences consecutively for a controlling term of 1,029 months imprisonment.

*Analysis*

Historically, Kansas courts had broad common-law discretion to modify sentences on remand. Sentences were seen as a singular entity that could not be subdivided into correct and incorrect counts. So remand for resentencing on one count allowed all counts to be resentenced as the district court saw fit. But this common-law principle was nullified upon passage of the KSGA. *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018).

Because of the KSGA, a district court now lacks the authority to modify a sentence unless plain statutory language provides such authority. *Guder*, 293 Kan. at 766. And the Kansas Supreme Court has held the KSGA does not provide a district court jurisdiction to resentence all of a defendant's counts when only the sentence on some counts is illegal. *Warren*, 307 Kan. at 613; *Guder*, 293 Kan. at 766-67. Rather, as the court has held in cases directing resentencing of an illegal sentence on remand, courts may vacate and resentence only the counts on which the defendant received an illegal sentence in a multiconviction case. *Jamerson*, 309 Kan. at 216. A limited exception to this rule applies when vacating one sentence renders another sentence unlawful. See *State v. Morningstar*, 299 Kan. 1236, 1244-45, 329 P.3d 1093 (2014).

McMillan argues his original sentence was illegal only on count one, and not on counts two and three. McMillan points to the journal entry of sentencing in claiming the district court, in reaching a sentence of 1,068 months, imposed an upward durational departure on all three counts. And he notes that departure factors supporting an upward durational departure only existed as to counts two and three. Thus, he claims that while the upward departure sentences he received on counts two and three were legal, the upward departure sentence he received on count one was not. He contends that, under *Guder*, *Warren*, and *Jamerson*, the district court therefore only had authority on remand to modify his illegal sentence on count one and could not modify his sentence on count two.

McMillan also cites to *State v. Hayden*, 449 P.3d 445, 446 (Kan. App. 2019) (unpublished opinion) (*Hayden II*), which he claims is directly on point.

In *Hayden II*, the defendant pleaded guilty to five counts and stipulated to the existence of an aggravating factor justifying an upward departure sentence on the first three counts. She did not stipulate to the existence of this aggravating factor on the fourth or fifth counts, however. Because counts three and four—the two most severe crimes—

were both severity level 5 nonperson felonies, the district court had discretion to designate either one of those counts as the primary offense, but it could only impose an upward departure on count three. At sentencing, the State mistakenly requested an upward durational departure on count four, and none of the other counts. The district court designated count four as the primary offense, granted an upward durational departure on count four, and imposed consecutive presumptive sentences on the other counts.

Hayden appealed, arguing the district court erred in sentencing her. A panel of this court agreed and found the district court likely intended to grant a departure on count three instead of four. Without discussing *Guder*, the panel then vacated Hayden's sentences on all five counts and remanded to the district court for resentencing as the district court saw fit. On remand the district court imposed an upward durational departure on count three and imposed consecutive presumptive sentences on the remaining four counts. *State v. Hayden*, 52 Kan. App. 2d 202, 211-12, 364 P.3d 962 (2015) (*Hayden I*).

Hayden once again appealed, arguing the panel in her first appeal lacked jurisdiction to vacate her sentences on all five counts and could only vacate her sentence on count four, since it was the sole illegally imposed sentence. She also argued the district court similarly only had jurisdiction to resentence her on count four.

The second panel to review her case agreed and reversed the decision of the first panel, as it had seemingly ignored the rule laid out in *Guder* in vacating her entire sentence. In explaining its decision, the panel noted that when Hayden appealed to the *Hayden I* panel, only one of her sentences was illegal. This was her sentence for count four, since no factual basis supported the upward durational departure. Under *Guder*, the panel in *Hayden I* thus only had jurisdiction to vacate Hayden's sentence on count four. *Hayden II*, 449 P.3d at 449. Because the district court entered presumptive sentences for

the other four counts when it originally sentenced Hayden, the *Hayden I* panel lacked jurisdiction to vacate those legal presumptive sentences. And since the *Hayden I* panel lacked jurisdiction to vacate Hayden's sentence on count three, the district court lacked jurisdiction to modify Hayden's sentence on count three at resentencing. It therefore vacated Hayden's sentence and remanded with instructions for the district court to resentence Hayden to her original sentences on all counts except for count four, which it was to resentence in accordance with the KSGA. This meant that at resentencing, the district court needed to keep with its original designation of count four as the primary offense. *Hayden II*, 449 P.3d at 450.

McMillan is correct that *Hayden II* is instructive here. Given that all three of McMillan's convictions were for severity level 1 felonies, the district court could designate count one as the primary offense. See K.S.A. 2021 Supp. 21-6819(b)(2). And the district court properly applied the KSGA in imposing departure sentences of 330 months on counts two and three. This figure represents twice the aggravated presumptive sentence for a severity level 1 felony with no criminal history applied, as required for nonbase sentences in a multiconviction case. See K.S.A. 2021 Supp. 21-6804; K.S.A. 2021 Supp. 21-6819(b)(5). Thus, the sentences McMillan originally received on counts two and three were legal.

In sentencing McMillan to a controlling term of 1,029 months, the district court modified his sentence on count two, increasing it from 330 months to 534 months. This was an impermissible modification of a legal sentence under *Guder*, *Warren*, and *Jamerson*.

The State concedes that McMillan accurately describes the journal entry of his original sentence. The State notes, however, that a criminal sentence is effective upon pronouncement from the bench and that where the journal entry conflicts with a district court's oral pronouncement of a sentence, the oral pronouncement controls.

Looking to the district court's oral pronouncement of McMillan's sentence, the State claims the district court never expressly designated any offense as the primary crime, nor did it pronounce individual sentences for the three courts. Instead, the district court simply declared that the total sentence was 1,068 months. The State argues it is thus not clear that the district court modified McMillan's sentence on count two on remand, as it is possible the sentencing court originally intended to impose a 534-month sentence on count two.

The State is correct that a defendant's sentence becomes final and appealable when the district court pronounces it from the bench, and where the sentence announced from the bench differs from what is later described in the journal entry, the orally pronounced sentence controls. *Abasolo v. State*, 284 Kan. 299, 304, 160 P.3d 471 (2007).

This is not to say, however, that a journal entry is completely irrelevant in determining the meaning of a district court's pronouncement of a sentence. While a district court may not modify the sentence pronounced from the bench by use of a journal entry, a journal entry can be used to clarify an unartfully worded pronouncement. "Clarification is not the same as modification, and a district court retains jurisdiction to file a journal entry of sentencing that clarifies an ambiguous or poorly articulated sentence pronounced from the bench." *State v. Jackson*, 291 Kan. 34, 36, 238 P.3d 246 (2010) (citing *State v. Crawford*, 253 Kan. 629, 649-50, 861 P.2d 791 [1993]), *abrogated on other grounds by State v. Marinelli*, 307 Kan. 768, 415 P.3d 405 (2018); see *State v. Garcia*, 288 Kan. 761, 765-67, 207 P.3d 251 (2009).

In *Garcia*, the issue was whether the district court, in originally sentencing Garcia, made a finding that his felony murder conviction was sexually motivated, as was necessary to impose sex offender registration requirements. Garcia argued that while the journal entry suggested the district court had made such a finding, the district court failed to do so in its oral pronouncement of his sentence.

20

In assessing this claim, the court acknowledged that a journal entry is merely a record of the sentence imposed and a district court has no jurisdiction to change a sentence after pronouncement. And the court noted the district court's statements at the original sentencing hearing were less than clear. The district court made no express finding that his felony murder conviction was sexually motivated and simply informed Garcia that he needed to register as a sex offender. The journal entry, meanwhile, revealed the district court found the felony murder conviction was sexually motivated.

The court explained, however, that there was no conflict between the journal entry and the oral pronouncement of the sentence. The journal entry merely acted to clarify the sentence imposed at the hearing. "While the oral pronouncement of sentence from the bench was not clear on which crimes were sexually motivated, the journal entry [made] it expressly clear." *Garcia*, 288 Kan. at 766. Because there was no sign that the district court was trying to change the sentence it imposed orally at the hearing, the journal entry reflected a clarification—rather than a modification—of Garcia's sentence as pronounced at the hearing. 288 Kan. at 766. The court contrasted this to the scenarios involving actual modifications, like where a district court tries to fix an error made at the hearing—such as imposing concurrent sentences when the court meant to impose consecutive sentences— or where the district court changes its mind and attempts to modify a sentence after oral pronouncement. 288 Kan. at 767.

Even when a district court's oral pronouncement of a sentence appears to conflict with the journal entry of the hearing, the Kansas Supreme Court has cautioned against reading the specific words of the pronouncement in isolation. Rather, reviewing courts should evaluate the meaning of the sentence imposed based on the context of the entire sentencing hearing—including the sentences requested by the parties—to determine whether there is actual variance between what occurred at the hearing and what is reflected in the journal entry memorializing the hearing. See *Juiliano*, 315 Kan. at 81; *State v. Hill*, 313 Kan. 1010, 1015-16, 492 P.3d 1190 (2021).

21

Looking to the context of the entire sentencing hearing here, the district court designated count one as the primary offense in originally sentencing McMillan. While the State is correct that the district court did not explicitly identify which count it was designating as the primary offense, the district court found that it was imposing the sentence requested by the State. And the State clearly requested that the district court designate count one as the primary offense.

In describing how it believed McMillan should be sentenced, the State repeatedly suggested that count one should operate as the primary offense. It specifically requested that McMillan receive a sentence of 267 months on count one and 165 months on counts two and three and asked the district court to impose an upward durational departure to double the sentences on these counts. The State confirmed to the district court that the maximum sentence a defendant can receive under the KSGA is double the sentence imposed on the primary count. And it said that McMillan's maximum possible sentence under the KSGA was thus limited to twice the sentence imposed on count one.

We therefore do not agree with the State's claim that the district court implicitly designated count two as the primary offense in its oral pronouncement of McMillan's sentence.

The State also claims, seemingly in the alternative, that if the district court's oral pronouncement of McMillan's original sentence on count two was unclear, it would constitute an illegal sentence, as it would be ambiguous as to the time and manner in which it is to be served. See K.S.A. 2021 Supp. 22-3504(c)(1). If this is the case, the State argues, then the district court had jurisdiction to resentence McMillan on count two. And if this panel concludes that the original transcript is unclear as to which crime the district court designated as the primary offense and as to the sentence for each individual count, the State argues that McMillan's original sentence would be illegal as a whole. In

22

this scenario, the State contends, the district court had jurisdiction to resentence McMillan on all three counts.

A sentence ambiguous as to the time and manner in which it is to be served when it is pronounced is illegal. K.S.A. 2021 Supp. 22-3504(c)(1).

In a slightly different but analogous situation, another panel has found that the terms of a defendant's individual sentences are clear where the terms of the individual sentences are implied by the district court pronouncement of the total controlling sentence. See *State v. Finley*, 18 Kan. App. 2d 419, 422, 854 P.2d 315 (1993).

In *Finley*, the defendant pleaded no contest to committing three counts of attempted terroristic threat. Each of these counts carried a maximum possible sentence of one year imprisonment. The Topeka State Hospital subsequently evaluated Finley and after determining he needed psychiatric care, recommended that he be committed to Larned State Security Hospital rather than imprisonment. The district court complied with this recommendation and ordered Finely committed to Larned State Hospital for a period of detention "'not exceed[ing] three years.'" 18 Kan. App. 2d at 420. Although not explicitly stated by the district court, the parties agreed that the district court apparently imposed the maximum sentence on each count, with the three counts running consecutively.

As relevant here, Finley argued the district court's pronouncement of his sentence could not impose three consecutive sentences, since the record was silent on how the district court arrived at the maximum three-year term of commitment. He noted that K.S.A. 1992 Supp. 21-4608(1), which is now codified at K.S.A. 2021 Supp. 21-6606(a), requires that "'[w]henever the record is silent as to the manner in which two or more sentences imposed at the same time shall be served, they shall be served concurrently.'" 18 Kan. App. 2d at 422.

23

The panel rejected the argument that the record was silent on the manner in which the sentences for the individual counts were to be served. It explained that although the district court did not announce sentences for the individual counts, the way the sentences for the individual counts were to be served was implied by the district court's announcement of the total controlling term of commitment. The court committed Finley for a period not to exceed three years for three crimes, each of which was punishable by up to one year of imprisonment. Thus, the implication was that the district court committed Finley for a period up to three consecutive maximum sentences. 18 Kan. App. 2d at 422.

Here, like in *Finley*, the district court did not announce the time or manner in which the individual sentences were to be served. At the same time, also like in *Finley*, it announced the total controlling sentence, which implied the terms of the individual sentences. Based on the district court's pronounced sentence of 1,068 months, it was implied that the district court had imposed upward departure sentences on all three counts and ran the counts consecutively. Otherwise, the sentences would not have exceeded the statutory cap of 1,068 months.

On the other hand, this case differs from *Finley* in some respects. Because the district court here imposed upward departures and imposed a controlling sentence based on the statutory cap, the total controlling sentence announced by the district court did not imply the specific length of each sentence.

Yet this deficiency seems to be cured by the fact that the district court suggested it was adopting the sentence requested by the State in imposing a total controlling sentence of 1,068 months. The State requested that the district court sentence McMillan to 267 months as to count one and 165 months on counts two and three, run the sentences consecutively, and depart up to a controlling sentence of 1,068 months. And in explaining to the district court how it should apply the aggravating factors found by the jury to reach

24

a controlling sentence of 1,068 months, the State seemed to recommend the district court give a sentence of the aggravated number on each count and then double each of those sentences, before the district court cut it off and adopted the State's recommendation as the order of the court. These statements, taken together, implied that the district court imposed a sentence of 534 months on count one and 330 months on counts two and three, as these sentences represent double the aggravated number on each count.

Finally, and even more to the point, the State does not point to any authority that a sentence is ambiguous where a district court pronounces the total controlling sentence but does not specify the sentences for the individual counts. Instead, it merely points to the statutory definition of an illegal sentence. Here, the sentence pronounced by the district court made it clear the time and manner in which McMillan's sentence was to be served: 1,068 months in prison.

In summary, McMillan's sentence does not appear to be so ambiguous as to render it illegal. The district court's pronouncement of McMillan's total controlling sentence, when read in context with the State's requested sentence, made the time and manner in which McMillan was to serve his sentence clear. We thus find that McMillan's sentence was not ambiguous as to the time and manner in which it was to be served when it was pronounced.

CONCLUSION

Looking to both the journal entry and the transcript of the sentencing hearing, we find that McMillan's characterization of his original sentence is correct. The sentence originally imposed by the district court included an upward durational departure on all three counts. And because the district court was justified imposing upward departure sentences on counts two and three but not count one, McMillan's original sentence is only illegal as to count one. We thus find the district court could not modify McMillan's

25

sentence on count two at resentencing by making it the primary offense and increasing the sentence from 330 to 534 months.

As in *Hayden II*, we vacate McMillan's sentences and remand to the district court with instructions to resentence McMillan to his original sentences on counts two and three and to resentence him on count one in accordance with the KSGA. This means that the district court must designate count one as the primary offense and impose consecutive sentences of 330 months on counts two and three.

And as McMillan notes, should the district court decide to exercise its discretion to again impose the maximum presumptive sentence of 267 months on count one, his maximum controlling sentence would be limited to twice that figure:  534 months. See K.S.A. 2021 Supp. 21-6819(c)(2).

Sentence vacated and case remanded with directions.