IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,831

STATE OF KANSAS,
*Appellee*,

v.

RAMON JUILIANO,
*Appellant*.

SYLLABUS BY THE COURT

1.

An illegal sentence is defined as a sentence imposed by a court without jurisdiction, a sentence that does not conform to the applicable statutory provision, or a sentence ambiguous about the time and manner to be served.

2.

Courts have statutory authority to correct an illegal sentence at any time, so an illegal sentence issue may be considered for the first time on appeal.

3.

The meaning of a sentence is derived from the context of the entire sentencing hearing.

4.

Where the sentence announced from the bench differs from the sentence described in the journal entry, the orally pronounced sentence controls.

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed February 18, 2022. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, was on the brief for appellant.

*Daniel G. Obermeier*, assistant district attorney, and *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  Ramon Anthony Juiliano appeals the district court's denial of his motion to correct an illegal sentence. A jury convicted Juiliano of criminal solicitation to commit first-degree murder and first-degree murder in 1998. The court sentenced Juiliano to life in prison without the possibility of parole for 40 years (hard 40). In 2014, Juiliano moved to correct an illegal sentence under K.S.A. 22-3504. The district court summarily denied his motion. Juiliano appeals, claiming his hard 40 sentence is illegal because (1) the court orally imposed a sentence at the sentencing hearing that did not conform to the appropriate statutory language; (2) the court erred by finding that he committed the murder in an especially heinous, atrocious, or cruel manner; and (3) the court erred by failing to reduce to writing the statutory criteria it relied on to impose the hard 40 sentence, as required by the relevant sentencing statutes. On Juiliano's first claim, we find the sentence orally imposed by the court at the sentencing hearing conformed to the appropriate statutory language and that Juiliano is serving a legal sentence. On Juiliano's second and third claims, we find K.S.A. 22-3504 is an improper vehicle to challenge the procedural errors alleged. For these reasons, we affirm.

2

In November 1997, a jury convicted Juiliano of criminal solicitation to commit first-degree murder and premeditated first-degree murder in the shooting death of Jack West. The State moved for a hard 40 sentence under K.S.A. 1996 Supp. 21-4635, alleging Juiliano caused West "serious mental anguish" in the days before the murder. The State relied on the following evidence: Juiliano had been stalking West before the murder; a masked gunman assaulted West in his driveway three weeks before the murder and, on the night of the murder, Juiliano killed West under similar circumstances; and Juiliano plotted the murder in advance and even tried to hire another person to do it about two months before the homicide.

Juiliano opposed the motion. He relied on *State v. Cook*, 259 Kan. 370, 913 P.2d 97 (1996), *superseded by statute as stated in State v. McLinn*, 307 Kan. 307, 409 P.3d 1 (2018), to claim shooting deaths seldom warrant a finding that the crime was committed in a heinous, atrocious, or cruel manner. He also asserted none of the recognized exceptions from *State v. Brady*, 261 Kan. 109, 929 P.2d 132 (1996), *abrogation recognized by State v. Jones*, 283 Kan. 186, 151 P.3d 22 (2007), or *State v. Alford*, 257 Kan. 830, 896 P.2d 1059 (1995), applied. Juiliano claimed he did not prolong the shooting or inflict any sort of extreme mental anguish before death. He argued that the case was not unusual as compared to other shooting deaths and, for that reason, the court could only impose a hard 25 sentence.

The district court held a sentencing hearing in February 1998. The court ultimately granted the State's motion to impose a hard 40 sentence based on its finding that Juiliano committed the murder in an especially heinous, atrocious, and cruel manner. Along with the hard 40 sentence, the court imposed a consecutive 49-month sentence for the criminal solicitation charge.

Relevant to this appeal, the sentencing journal entry filed after the sentencing hearing failed to specify the specific statute under which the court imposed the hard 40 sentence. The journal entry also failed to identify which aggravating factors the court relied on to justify the hard 40 sentence. But the journal entry clarified multiple times that the court was imposing a hard 40 sentence and that it was granting the State's motion to impose a hard 40 sentence.

Juiliano appealed his convictions and sentence to this court. On direct appeal, he asserted that the district court committed reversible error in answering a jury question and challenged the sufficiency of the evidence supporting his convictions. We affirmed Juiliano's convictions and sentence. *State v. Juiliano*, 268 Kan. 89, 94-98, 991 P.2d 408 (1999).

Juiliano filed a pro se motion to correct an illegal sentence. In it, he alleged his hard 40 sentence was illegal because the district court imposed it under a statutory procedure found to be unconstitutional under *State v. Soto*, 299 Kan. 102, 322 P.3d 334 (2014), and *Alleyne v. United States,* 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). He claimed his hard 40 sentence was unconstitutional because it allowed the sentencing judge, instead of a jury, to find additional facts that increased his sentence. Although *Soto* and *Alleyne* were decided after he was sentenced, Juiliano asked the district court to retroactively apply their holdings. The district court denied Juiliano's motion, finding *Soto* and *Alleyne* could not be retroactively applied to cases finally decided before those decisions were rendered. Juiliano appeals.

4

ANALYSIS

Whether a sentence is illegal is a question of law subject to de novo review. *State v. Redding*, 310 Kan. 15, 23, 444 P.3d 989 (2019). An illegal sentence is defined as: (1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served. K.S.A. 2020 Supp. 22-3504(c)(1); *State v. Gilbert*, 299 Kan. 797, 801, 326 P.3d 1060 (2014).

When a district court summarily denies a motion to correct an illegal sentence under K.S.A. 22-3504, this court exercises de novo review of that decision because it has the same access to the motions, records, and files as the district court. 299 Kan. at 801. A K.S.A. 22-3504 motion may be summarily denied without the appointment of counsel when the motion, files, and records of the case conclusively show the defendant has no right to relief. But a district court is statutorily required to appoint an attorney to represent an indigent defendant when the K.S.A. 22-3504 motion presents a substantial question of law or triable issue of fact. *State v. Laughlin*, 310 Kan. 119, 121, 444 P.3d 910 (2019).

To the extent that these issues involve statutory interpretation, this court also exercises unlimited review over such questions. *State v. Jamerson*, 309 Kan. 211, 214, 433 P.3d 698 (2019).

Juiliano argues that the district court erred in summarily denying his motion to correct an illegal sentence. He concedes his claim that *Soto* and *Alleyne* should be retroactively applied is now foreclosed by our decision in *State v. Brown*, 306 Kan. 330, Syl. ¶¶ 1, 2, 393 P.3d 1049 (2017) (holding that motions to correct illegal sentence were not appropriate vehicle to challenge sentence imposed in violation of *Alleyne* and

recognizing *Alleyne* only applies prospectively). Instead, Juiliano raises three new arguments to support his illegal sentence claim: (1) the court orally imposed a sentence at the sentencing hearing that did not conform to the appropriate statutory language; (2) the court erred by finding that he committed the murder in an especially heinous, atrocious, or cruel manner; and (3) the court erred by failing to reduce to writing the statutory criteria it relied on to impose the hard 40 sentence.

The State argues Juiliano abandoned these arguments because he did not properly explain why we should consider them for the first time on appeal. Even so, courts have a statutory duty to correct an illegal sentence at any time. Although Juiliano failed to argue one of the recognized exceptions to the preservation rule in his brief, this court can address the illegal sentence issues for the first time on appeal. See *State v. Sartin*, 310 Kan. 367, 375, 446 P.3d 1068 (2019); *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

1. *The district court's oral pronouncement of sentence*

Juiliano first argues that his sentence, as pronounced from the bench, is illegal because it does not conform to the appropriate statutory language. He challenges the following wording in the district court's oral pronouncement at sentencing:

> "Based upon these reasons, I am granting the State's motion for the hard 40 sentence on the first degree premeditated murder case. *The defendant will be sentenced* over into the custody of the Department of Corrections on the one count of murder, K.S.A. 21-3401, a person felony off grid, *to the hard 40 sentence of life without parole.*" (Emphases added.)

Juiliano argues the italicized language establishes the judge sentenced him to a "life without parole" sentence instead of a true hard 40 sentence. Because a life without parole

sentence does not conform to the statutory authorized provisions in K.S.A. 1996 Supp. 21-4635 and 21-4638, he argues his sentence is illegal.

The court sentences a person convicted of a crime in accordance with the sentencing provisions in effect when the person committed the crime. *State v. Overton*, 279 Kan. 547, 561, 112 P.3d 244 (2005). The applicable statutes for sentencing in effect when Juiliano committed his crimes were K.S.A. 1996 Supp. 21-4635 and 21-4638.

K.S.A. 1996 Supp. 21-4635(a) provides that if a defendant is convicted of premeditated first-degree murder, the court must determine whether the defendant is required to serve a hard 40 sentence, or another sentence as provided by law. Subsection (b) outlines the method for the sentencing court to determine if any aggravating or mitigating factors exist. Subsection (c) explains that if the sentencing court finds one or more aggravating factors exist and those factors are not outweighed by any existing mitigating circumstances, the court must impose the hard 40 sentence described in K.S.A. 1996 Supp. 21-4638.

K.S.A. 1996 Supp. 21-4638 states:

> "When it is provided by law that a person shall be sentenced pursuant to this section, *such person shall be sentenced to imprisonment for life* and shall not be eligible for probation or suspension, modification or reduction of sentence. In addition, *a person sentenced pursuant to this section shall not be eligible for parole prior to serving 40 years' imprisonment, and such 40 years' imprisonment shall not be reduced by the application of good time credits*." (Emphases added.)

Juiliano's nonconforming "life without parole" argument is virtually identical to the one made in *State v. Hill*, 313 Kan. 1010, 1012, 492 P.3d 1190 (2021). In that case, the sentencing judge ordered Hill to serve a hard 50 sentence after he was convicted of

7

capital murder. At the sentencing hearing, the judge kept referring to the sentence for capital murder as a term of "life imprisonment without possibility of parole" even though both parties continued clarifying that the State was seeking a hard 50 sentence for the capital murder conviction. In pronouncing the hard 50 sentence, the judge specifically ordered Hill to serve a "'sentence of life imprisonment without possibility of parole.'" 313 Kan. at 1012. The parties understood the pronouncement to mean that Hill was to serve a hard 50 sentence, and the sentencing journal entry later reflected that he was to serve a hard 50 sentence. On appeal, Hill asserted for the first time that his sentence was illegal because the district court improperly pronounced a life without parole sentence, a sentence that was not statutorily authorized at the time of the pronouncement.

This court was not persuaded by Hill's argument. We pointed out that in looking narrowly at the words Hill focused on, we would agree that the sentencing judge failed to mention the mandatory minimum 50-year term. But when looking to the entire context of the sentencing hearing, it was "sufficiently clear to everyone present that Hill was to receive the mandatory hard 50 sentence and they acted accordingly." 313 Kan. at 1015. After explaining the context in greater detail, we determined, "[T]he meaning of the sentence pronounced from the bench is the sentence reflected in Hill's journal entry. There is ultimately no ambiguity and Hill is serving a legal sentence." 313 Kan. at 1016.

Applying the principle from *Hill* to this case—i.e., evaluating the meaning of a sentence based on the context of the entire sentencing hearing—we find the district court imposed a hard 40 sentence. While the court could have used better wording, the context makes it clear the court ordered Juiliano to serve a hard 40 sentence. The State filed a motion specifically requesting a hard 40 sentence under K.S.A. 1996 Supp. 21-4638. Defense counsel responded, arguing that the hard 40 sentence should not apply in this case. At the sentencing hearing, before the parties' arguments, the court noted on the record that it had read through the State's hard 40 sentence motion and Juiliano's

8

response. This readily establishes the court understood the State was seeking the hard 40 sentence as outlined in K.S.A. 1996 Supp. 21-4638. Throughout the hearing, the prosecutor and defense counsel repeatedly referred to the proposed sentence as the hard 40 sentence. The prosecutor also consistently asked the court to "impose the hard 40" sentence. In making its finding, the court made clear it was granting the State's motion for the "hard 40 sentence on the first degree premeditated murder case." All of this came before the judge finally declared, "The defendant will be sentenced . . . to the hard 40 sentence of life without parole." We find no ambiguity in the sentence pronounced, which conformed to K.S.A. 1996 Supp. 21-4638.

2. *The aggravating circumstance*

Juiliano next argues that the district court erred by imposing a hard 40 sentence because it improperly determined he committed the murder in an especially heinous, atrocious, or cruel manner. See K.S.A. 1996 Supp. 21-4635(b); K.S.A. 1996 Supp. 21-4636(f). He asserts the district court inappropriately combined the facts of the crime of conviction with a finding that Juiliano was the masked gunman who threatened West with a gun outside his home three weeks before the murder, an incident never charged. Juiliano argues the statutory language of K.S.A. 1996 Supp. 21-4636(f) prohibited the court from considering the prior uncharged incident—specifically, the provision limits consideration of the aggravating factor *only* to the crime of conviction and not any other unrelated and uncharged circumstances.

Juiliano's argument fails based on our court's holding in *State v. Peirano*, 289 Kan. 805, 217 P.3d 23 (2009). *Peirano* presented almost identical circumstances to the case here. Peirano was convicted in 1994 of two counts of first-degree murder and sentenced to serve two concurrent hard 40 life sentences. In imposing the hard 40 sentences, the sentencing court found an aggravating factor existed:  Peirano committed the murders in

9

an especially heinous, atrocious, or cruel manner. Thirteen years later, he moved to correct an illegal sentence arguing that the district court erred in finding that the especially heinous, atrocious, or cruel aggravating factor applied.

Before addressing the issue, we determined that a motion to correct an illegal sentence under K.S.A. 22-3504(1) was the improper vehicle for challenging these kinds of alleged procedural errors. The court explained:

> "When, for example, a trial court failed to permit a defendant to offer argument in mitigation of sentence, the sentence was not illegal, because the sentencing court had jurisdiction and the sentences imposed were within the applicable statutory limits. *State v. Heath,* 285 Kan. 1018, 1019-20, 179 P.3d 403 (2008) (citing *State v. Mebane,* 278 Kan. 131, 134-35, 91 P.3d 1175 [2004]); see also *Trotter v. State,* 288 Kan. 112, 126-27, 200 P.3d 1236 (2009) (claim that multiple sentences arose from single wrongful act and violated Double Jeopardy Clause does not establish that sentence is illegal); *State v. Mitchell,* 284 Kan. 374, 377, 162 P.3d 18 (2007) (definition of illegal sentence does not encompass violations of constitutional provisions); *State v. Harp,* 283 Kan. 740, 744, 156 P.3d 1268 (2007) (sentence violating identical offense doctrine is not an illegal sentence within meaning of K.S.A. 22-3504); *State v. Johnson,* 269 Kan. 594, 601, 7 P.3d 294 (2000) (claim that State's comments at sentencing were inconsistent with plea agreement does not render resulting sentence illegal).

> "In the present case, Peirano challenges the procedures that the district court followed in applying K.S.A. [1994 Supp.] 21-4635 to his sentence. The sentence itself was authorized by a valid statute, both as to its character and its term, and the sentence was not ambiguous with respect to the time and manner in which it was to be served. The sentence was therefore not illegal under the limited terms of K.S.A. 22-3504, and no reversible error has occurred." *Peirano*, 289 Kan. at 807.

In other words, Peirano did not argue that the sentencing court lacked jurisdiction. He did not argue that the court imposed a sentence that failed to conform to the

10

authorized term in the applicable sentencing statute. He also did not argue that his sentence was not ambiguous as to the time or manner it was to be served. Rather, he challenged the procedure the court followed in imposing the statutorily authorized term—i.e., whether the sentencing court erred in finding the aggravating factor to exist. Because this was a procedural challenge, we ruled that it was inappropriate to address with a motion to correct an illegal sentence. 289 Kan. at 807.

Juiliano, like the defendant in *Peirano*, ultimately challenges the procedure the district court followed in finding that the especially heinous, atrocious, or cruel aggravating factor applied. He does not argue that the sentencing court lacked jurisdiction to impose his sentence. He does not claim that his sentence is ambiguous as to the time or manner it was to be served. Juiliano's sentence was authorized by a valid statute, both as to its character and its term, and the sentence was not ambiguous with respect to the time and manner in which it was to be served. The limited definition of an illegal sentence set forth in K.S.A. 2020 Supp. 22-3504 necessarily forecloses Juiliano's illegal sentence claim based on the district court's aggravated factor finding.

3. *Statutory "in writing" requirements*

Juiliano finally argues that his sentence is illegal because the district court failed to follow the written requirements of K.S.A. 1996 Supp. 21-4635(c) and 21-4638 when it issued the final sentencing journal entry. Juiliano asserts K.S.A. 1996 Supp. 21-4635(c) required the court to specify in the journal entry the aggravating factor it relied on. He also claims that K.S.A. 1996 Supp. 21-4638 required the court to specify he was sentenced under K.S.A. 1996 Supp. 21-4638.

The State correctly counters this argument has no merit. Juiliano does not argue the district court lacked jurisdiction to impose the hard 40 sentence. He does not argue

11

the sentence itself was not statutorily authorized. And he does not challenge his sentence as ambiguous. He simply argues the court failed to reduce certain findings to writing as the statutes required. As we note in the preceding section, the statutory definition of an illegal sentence is a limited one and does not apply to journal entry discrepancies. A sentence in a criminal case is effective at the moment the court pronounces it from the bench. A sentencing judgment does not derive its effectiveness from the sentencing journal entry. The journal entry merely records the sentence imposed. *State v. Phillips,* 289 Kan. 28, 33, 210 P.3d 93 (2009). So if there is a discrepancy between the pronounced sentence and the written journal entry, our court has held that the pronounced sentence controls. *Abasolo v. State,* 284 Kan. 299, 304, 160 P.3d 471 (2007).

Applying that logic here, the sentencing hearing transcript clearly establishes the district court pronounced a hard 40 sentence. The analysis from the first section regarding the context of the entire sentencing hearing is incorporated and applied here. Any discrepancies in the journal entry do not trump that oral pronouncement, and the appropriate remedy for such errors is to file a motion for a nunc pro tunc order. See *State v. Moncla,* 262 Kan. 58, 79, 936 P.2d 727 (1997).

Affirmed.

12