NOT DESIGNATED FOR PUBLICATION

Nos. 128,619
128,620

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CAMERON GREGORY WARREN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Submitted without oral argument. Opinion filed June 12, 2026. Affirmed in part, vacated in part, and remanded with directions.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., HILL and BRUNS, JJ.

PER CURIAM:  Cameron Gregory Warren appeals from the district court's revocation of his probation in a 2018 case and from his sentence in a 2023 case. On appeal, Warren contends the following:  that his original sentence was illegal; that the district court improperly invoked the public safety or offender welfare exception to revoke his probation; and that the district court failed to award him the jail time credit which he was owed. For the reasons set forth in this opinion, we conclude that Warren's original sentence was legally imposed and that the district court appropriately applied the

public safety or offender welfare exception to bypass intermediate sanctions. But we also find that the district court failed to award Warren with all the jail time credit to which he is entitled. Thus, we affirm in part, vacate in part, and remand with directions.

FACTS

In 2018, Warren pled guilty to burglary and theft pursuant to a plea agreement with the State. The district court later accepted his plea and sentenced him to two concurrent 13-month prison sentences at a hearing held on September 20, 2018. It then suspended the sentences and placed Warren on probation for a term of 60 months pursuant to the parties' recommendations. This was to give Warren time to repay $25,000 in restitution. In the journal entry of judgment, the district court indicated that it relied upon K.S.A. 21-6608(c)(5) to sentence Warren to an elongated term of probation.

Around a year later, Warren admitted to violating the terms of his probation by failing to refrain from possessing or using drugs and/or alcohol. He also admitted to testing positive for having cocaine in his system. Based on Warren's admission, the district court imposed a two-day intermediate jail sanction. Shortly thereafter, on November 7, 2019, a warrant was issued alleging that Warren violated the terms of his probation by failing to report to his probation officer; failing to obey the directions of his probation officer; failing to make scheduled restitution payments; and failing to pay for urinalysis tests.

On December 5, 2023, the State charged Warren with two new crimes including one count of felony theft and one count of misdemeanor theft. The State alleged that Warren committed the new crimes in December 2022. In February 2024, Warren was arrested for the new crimes as well as the 2019 warrant claiming that he violated the terms of his probation in the 2018 case. On March 14, 2024, the State sought another warrant alleging that Warren violated the terms of his probation based on the new crimes.

2

In response, Warren moved to quash the warrants and requested that this probation, in his 2018 case, be terminated. Here, Warren claimed that the State waived its right to enforce the terms of the probation since it failed to make reasonable efforts to locate him. The district court denied Warren's motion to quash. In doing so, the district court found that the State had conducted a reasonable investigation and exercised reasonable diligence in their attempt to locate Warren to serve him with the 2019 warrant. The State then withdrew its March 2024 probation violation warrant because it was filed after the 60-month probation period expired. Still, Warren admitted to violating the terms of his probation as alleged in the 2019 warrant and waived his right to an evidentiary hearing.

Thereafter, Warren pled guilty to one count of felony theft in the new case. At a joint sentencing and probation revocation hearing, the district court imposed a modified 11-month prison sentence in his new case to run consecutive to his sentence in the 2018 case. The district court then revoked Warren's probation in the 2018 case. It did so via bypassing the imposition of intermediate sanctions based on the public safety or the offender's welfare exception. And the district court also explained its rationale on the record.

The district court further awarded Warren with seven days of jail time credit for time spent in custody pending the disposition of his new case. But it did not award any jail time credit for the eight days Warren spent in jail from February 28, 2024, to March 6, 2024, noting that Warren was being held in the 2018 case during that same timeframe.

Subsequently, Warren filed timely notices of appeal in both his 2018 and 2023 cases.

ANALYSIS

*Legality of Sentence in 2018 Case*

Warren contends—for the first time on appeal—that his underlying sentence in his 2018 case was illegal because he received probation for a period of 60 months instead of 24 months. He asserts that he should have been released from probation in September of 2020 had he not received an illegal sentence in his 2018 case. Consequently, he argues that Special Rule 9 should not apply to his 2023 case and that he should have been a candidate for presumptive probation.

In response, the State contends that the district court accepted the parties' plea agreement in the 2018 case—which effectively constituted a departure from the recommended length of probation—in imposing probation for 60 months. Specifically, Warren agreed to pay $25,000 in restitution to the victim in exchange for the State agreeing to recommend an extended period of probation. This recommended period was to give Warren enough time to make full restitution. In addition, the State argues that the district court stated substantial and compelling reasons—on the record—for extending Warren's probationary period.

"'Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which the appellate court has unlimited review.'" *State v. Jacobson*, 319 Kan. 70, 72, 552 P.3d 1239 (2024) (quoting *State v. Claiborne*, 315 Kan. 399, 400, 508 P.3d 1286 [2022]). This is because it has the same access to the motions, records, and files as the district court. *State v. Taylor*, 299 Kan. 5, 7-8, 319 P.3d 1256 (2014). Likewise, to the extent this appeal involves statutory interpretation, it also presents a question of law over which our review is unlimited. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

In Kansas, courts may correct an illegal sentence at any time—even if raised for the first time on appeal. See K.S.A. 22-3504(a); *State v. Dickey*, 301 Kan. 1018, 1031, 350 P.3d 1054 (2015)**.** Under K.S.A. 22-3504(c)(1), an illegal sentence is one "that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." The applicable "'statutory provision'" is defined as the "'statute defining the crime and assigning the category of punishment to be imposed.'" *State v. McCroy*, 313 Kan. 531, 538, 486 P.3d 618 (2021).

It is undisputed that the recommended duration of probation in Warren's 2018 case was 24 months under K.S.A. 21-6608(c)(1)(B). But the district court was permitted to impose up to a 60-month probationary term under K.S.A. 21-6608(c)(6). The parties—in the written plea agreement for the 2018 case—cite to K.S.A. 21-6608 in order to justify their joint recommendation for extending Warren's probation from 24 months to 60 months. Because the district court did not go above the 60-month statutory limit when imposing Warren's probation in the 2018 case, we find that his sentence was not illegal. See K.S.A. 21-6608(c)(1)(B), (c)(6).

The State candidly concedes that the district court incorrectly cited to K.S.A. 21-6608(c)(5) instead of K.S.A. 21-6608(c)(6) to justify the extension of Warren's probation. But it correctly points out that the Kansas Supreme Court has held that "'[a] criminal sentence is effective upon pronouncement from the bench.'" *State v. Redick*, 317 Kan. 146, 147, 526 P.3d 672 (2023). In other words, in a criminal case, it is the pronouncement of the sentence on the record that controls—not the journal entry. And if the sentence pronounced from the bench is legal, then a discrepancy in the accompanying journal entry can be subsequently corrected via a nunc pro tunc order. 317 Kan. at 147.

Here, we find that the sentence announced by the district court from the bench was a legal sentence under K.S.A. 21-6608(c)(6) and the error in the journal entry did not

render it invalid. See 317 Kan. at 147-48. A review of the record reveals that Warren expressly agreed to pay the victim $25,000 in restitution—upon a successful guilty plea. And he further agreed to "an extended period of probation of 60 months pursuant to K.S.A. 21-6608, to allow [him] time to make full restitution." In adopting the parties' agreement at the sentencing hearing, the district court explained that "[t]he basis for that extension is the agreement of the parties" and that restitution would likely take more than two years to pay. Additionally, the district court further emphasized that Warren's success on probation served his welfare as well as the victim.

In summary, we find that the sentence in Warren's 2018 case was legal. Likewise, we conclude that the district court's citation to the wrong subsection of K.S.A. 21-6608(c)—in the journal entry—did not render an otherwise legal sentence illegal. Significantly, as our Supreme Court has found, this is the type of mistake that can be corrected via a nunc pro tunc order. See *Redick*, 317 Kan. at 147-48. Furthermore, because the sentence in the 2018 case was legal, we also find that the sentence in the 2023 case to be legal as Warren was still on probation when he committed his new crime on December 11, 2022. Consequently, the district court was statutorily authorized to apply Special Rule No. 9 in the 2023 case and Warren is not entitled to relief.

*Revocation of Probation*

Next, Warren contends that the district court failed to make particularized findings to utilize the public safety or offender welfare exception in bypassing the imposition of intermediate sanctions to revoke his probation. In response, the State contends that the district court made particularized findings to support its determination. Based on our review of the record on appeal, we agree with the State.

K.S.A. 2017 Supp. 22-3716(c)(9)(A)—which was in effect at the time Warren committed the crimes in his 2018 case—provides that a district court could revoke an

6

offender's probation without previously imposing an intermediate sanction. But the district court was required to state "with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." K.S.A. 2017 Supp. 22-3716(c)(9)(A). Our Supreme Court has found that implicit findings are not sufficient where the statute mandates the inclusion of particularized findings. *State v. Tafolla*, 315 Kan. 324, 330, 508 P.3d 351 (2022). More recently, a panel of this court explained that while the district court must "explicitly describe what in a defendant's background and criminal conduct warrants [revoking] probation and how that [revocation] directly serves the defendant's welfare or a community interest in safety," no "magic words" are required. *State v. Oathout*, 65 Kan. App. 2d 851, 860-61, 573 P.3d 751 (2025).

Here, a review of the record reveals that the district court expressly stated that it was "making public safety findings and defendant's welfare findings." It then explained that Warren continued to use drugs "when [he] had the most to lose . . . and [made] it dangerous [for] members of th[e] community . . . ." The district court further indicated that "[Warren] had just been in front of the Court for [his] plea and for a bond modification, [before he] went out and did this." Likewise, the district court noted that Warren had "a bad drug addiction, [which was] very dangerous to [himself] and others" whether Warren was under the influence when he committed his crimes or "stealing or burglarizing to feed the addiction." Furthermore, the district court found that Warren "put others at risk, certainly on the burglary . . . [as well as] stealing from . . . [his] friend." Ultimately, the district court found that Warren's conduct was "dangerous [both] . . . to [himself] and certainly the community."

Although the district court may not have used "magic words" in revoking Warren's probation and bypassing intermediate sanctions, it did make specific findings based on public safety and Warren's welfare. See *Oathout*, 65 Kan. App. 2d at 860-61. It then plainly described what in Warren's criminal history and conduct warranted the revocation

of his probation alongside how public safety as well as his own welfare would not be served by the imposition of intermediate sanctions. Accordingly, we find the district court's on-the-record findings are sufficient to satisfy the particularity requirement of K.S.A. 2017 Supp. 22-3716(c)(9)(A).

*Jail Time Credit*

Lastly, Warren seeks an additional eight days of jail time credit in his 2023 case based on *State v. Ervin*, 320 Kan. 287, 566 P.3d 481 (2025). The State responds contending that Warren received all the jail time credit he was owed. Alternatively, the State argues that *Ervin* was wrongly decided.

Interpretation of the jail time credit statute, K.S.A. 21-6615, involves a question of law over which our review is unlimited. See *Daniels*, 319 Kan. at 342. When a statute is plain and unambiguous, our analysis focuses on "'giving common words their ordinary meanings, without adding to or subtracting from the text.'" *Ervin*, 320 Kan. at 306-07. At the same time, as an intermediate appellate court, we are duty bound by the Kansas Supreme Court's interpretation of Kansas statutes. See *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022).

Warren acknowledges that he did not raise this issue before the district court. However, we find it significant that the Kansas Supreme Court decided *Ervin* while this case was already pending on appeal. Moreover, we find that the resolution of this issue may prevent the denial of a fundamental liberty interest. Therefore, while we are not required to do so, we conclude that it is appropriate for us to consider this issue for the first time on appeal. See *Ervin*, 320 Kan. at 306.

Likewise, because *Ervin* is now binding precedent, we find that the Kansas Supreme Court's interpretation of K.S.A. 21-6615(a) in that case is applicable to this

appeal. See *Patton*, 315 Kan. at 16. And although we appreciate the State's arguments that *Ervin* was wrongly decided, our Supreme Court recently rejected this argument in *State v. Zongker*, 322 Kan.137, 140-43, 586 P.3d 769 (2026). Thus, no indication exists that the holding in *Ervin* will be modified in the foreseeable future.

In *Ervin*, the Kansas Supreme Court held that the relevant version of K.S.A. 21-6615 "require[s] a district court to award [credit] for all time spent [in jail] 'pending the disposition of the defendant's case.'" 320 Kan. at 311; see *State v. Hopkins*, 317 Kan. 652, 657, 537 P.3d 845 (2023). Our Supreme Court further explained that the jail credit statute compels an award of one day of jail time credit for "each day that [a defendant is] incarcerated pending disposition of [a criminal] case regardless of whether [the defendant] received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12. Here, because Warren's conviction resulted from an act committed in 2022, K.S.A. 2022 Supp. 21-6615—as interpreted by *Ervin*—controls the amount of jail time credit to be awarded. See *State v. Juiliano*, 315 Kan. 76, 80, 504 P.3d 399 (2022).

It is undisputed that the Kansas Legislature amended K.S.A. 21-6615(a) in 2024 to preclude the award of duplicative jail time credit. L. 2024, ch. 96, § 7. The State argues that we should retroactively apply the 2024 amendment to this appeal while Warren claims that the amendment is not applicable to his sentences. But as this court has previously found, our Legislature never included language which suggests the 2024 amendment applies retroactively. See *State v. Mitchell*, 66 Kan. App. 2d 196, 204, 579 P.3d 970 (2025), *rev. granted* 321 Kan. 793 (2026). As a result, we find that the 2024 amendment to K.S.A. 21-6615 is not applicable to Warren's criminal cases.

We pause to note that the 2026 Kansas Legislature has amended K.S.A. 21-6615 to include language regarding retroactivity. L. 2026, ch. 62, § 1. Yet we also note that this amendment is not effective until July 1, 2026. And neither party has argued that the 2026

9

amendment applies to this case. Consequently, we take no position on any potential impact the 2026 amendment might have on jail time credit that Warren is entitled to under K.S.A. 21-6615.

Finally, we recognize that the district court did not have the benefit of the Kansas Supreme Court's decisions in *Ervin* or *Zongker* when it decided the amount of jail time credit to award Warren. Nevertheless, these decisions represent binding precedent both on our court and on the district court. See *Patton*, 315 Kan. at 16. Hence, we conclude that the district court's calculation of jail time credit should be vacated. And we remand for a determination of whether Warren is entitled to receive any additional jail time credit based on K.S.A. 2022 Supp. 21-6615(a).

Affirmed in part, vacated in part, and remanded with directions.