NOT DESIGNATED FOR PUBLICATION

Nos. 128,268
128,269
128,270
128,271
128,272

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL D. WALKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Submitted without oral argument. Opinion filed June 12, 2026. Vacated and remanded with directions.

*Jennifer Roth*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BOLTON FLEMING, J., and JEFFREY GETTLER, District Judge, assigned.

PER CURIAM: This appeal requires us to review Michael D. Walker's sentences in five Sedgwick County District Court cases.

The district court sentenced Walker to a total of 238 months in prison between his five cases. As part of Walker's sentencing, the district court awarded jail credit in some

1

but not all of Walker's cases, finding that Walker was not entitled to jail credit for cases that were sentenced consecutively. Additionally, the sentencing journal entry in one case reflected a sentence of 144 months, but that term contradicted the prison sentence of 124 months pronounced from the bench. Further, the court costs included in the sentencing journal entry for one case reflected a Bond Forfeiture Alias Warrant (BFAW) fee of $482.50, which was not ordered by the court during sentencing.

On appeal, we are required to vacate Walker's sentence in Case No. 21 CR 1907 and remand for resentencing. Walker's sentencing journal entry does not reflect the sentence that was pronounced from the bench. Under Kansas law, if a sentence pronounced from the bench conflicts with the sentence reflected in the sentencing journal entry, the pronounced sentence controls. In this case, the pronounced sentence was illegal because it did not fall within the Kansas sentencing guidelines and was not the result of a durational departure. On remand, the district court must also award Walker the jail credit he is owed in 21 CR 1907 applying *State v. Ervin*, 320 Kan. 287, 311-12, 566 P.3d 481 (2025).

We also find that the jail credit determinations in Case No. 21 CR 1908 and Case No. 21 CR 1916 were not made applying the principles from *Ervin.* We vacate the jail credit portion of the sentence in each case and remand for the district court to determine Walker's jail credit under *Ervin.*

Finally, we vacate the district court's order in Case No. 21 CR 959 awarding a BFAW fee of $482.50, because the district court did not make findings on the record that the fee was reasonably related to the prosecution of the crime. *State v. Alvarez*, 309 Kan. 203, 208, 432 P.3d 1015 (2019). Accordingly, we vacate and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

Michael D. Walker was sentenced in five Sedgwick County District Court cases: 21 CR 959 (two counts of criminal threat, severity level 9 person felonies); 21 CR 1907 (one count of possession of an opiate with intent to distribute within 1,000 feet of a school, a severity level 2 drug felony); 21 CR 1908 (two counts of possession of an opiate with intent to distribute, severity level 3 drug felonies; one count of possession of marijuana with intent to distribute, a severity level 4 drug felony; one count of possession of a controlled substance with intent to distribute, a severity level 4 drug felony); 21 CR 1916 (three counts of criminal discharge of a firearm, severity level 7 person felonies; two counts of criminal damage to property, class B misdemeanors; one count of criminal possession of a weapon, a severity level 8 nonperson felony); and 22 CR 439 (one count of possession of an opiate, a severity level 5 drug felony; one count of DUI, a class B misdemeanor).

The State filed each of the cases against Walker between May 18, 2021, and March 24, 2022. Walker entered pleas in each of these cases between May 1, 2023, and May 20, 2024. Walker was sentenced in all five cases on August 30, 2024. We note here only the facts pertinent to Walker's issues on appeal.

Prior to sentencing, Walker filed a motion for dispositional or durational departure in each case. At his sentencing, the district court assigned Walker a criminal score of "A" in four cases, and "B" in one case, due to cross-scoring of convictions under Kansas criminal history scoring rules. As part of a plea agreement, the State agreed to recommend a total of 161 months in prison between the five cases. But at sentencing, the State took the position that it was no longer bound by the plea agreement because Walker had violated the terms of his bond. Instead, the State recommended a total of 317 months in prison. Ultimately, the district court sentenced Walker to a total of 238 months in prison between the five cases and denied his request for a departure. The district court

reached the controlling sentence of 238 months by ordering the sentences in 21 CR 1907, 21 CR 1908, and 21 CR 1916 to run consecutive to each other, but concurrent to the sentences in 21 CR 959 and 22 CR 439.

The district court awarded Walker jail credit for the time spent in custody, stating, "You are awarded credit for any time you have spent in custody on these cases, so long as they are not awarded to a consecutive sentence in a different case." The district court awarded jail credit in 21 CR 959, 21 CR 1907, and 22 CR 439, but did not award jail credit in 21 CR 1908 and 21 CR 1916 because those cases were ordered to run consecutively to 21 CR 1907. Sentencing journal entries for each case were signed by the court and filed, but the journal entry for 21 CR 1907 reflected a sentence of 144 months instead of the 124-month sentence the district court pronounced from the bench. At sentencing, the court ordered various court costs in each case, but the sentencing journal entry for 21 CR 959 included a BFAW fee amount of $482.50, which had not been pronounced from the bench.

Walker timely appeals.

ANALYSIS

DID WALKER RECEIVE AN ILLEGAL SENTENCE IN CASE NO. 21 CR 1907?

On appeal, Walker first argues that the district court imposed an illegal sentence because the journal entry did not reflect the sentence pronounced from the bench for 21 CR 1907.

*Standard of Review*

A sentence is considered illegal when it is imposed by a court without jurisdiction; fails to "conform to the applicable statutory provision, either in character or punishment";

or "is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." K.S.A. 22-3504(c)(1); *State v. Zongker*, 319 Kan. 411, 436-37, 555 P.3d 698 (2024). Determination of whether a sentence is illegal is a question of law over which this court has unlimited review. 319 Kan at 437.

*Analysis*

The district court sentenced Walker in Case No. 21 CR 1907 as follows:

"In 21 CR 1907, the primary crime that controls the base sentence is Count 2, possession of an opiate within 1,000 feet of a school. It is a severity level 2, drug felony, placing the defendant in grid box 2D—correction—2A on the drug grid.

"Upon those findings, I sentence the defendant to the high number term of 124 months in the Department of Corrections. Post-release supervision is 36 months, and good-time credit is 15 percent. There is also a $400 lab fee in that case."

Later, a sentencing journal entry was prepared and signed by the district court that indicated Walker was sentenced to 144 months in prison instead of the 124 months pronounced from the bench. "[A] criminal sentence is effective when pronounced from the bench; it does not derive its effectiveness from the journal entry." *Abasolo v. State*, 284 Kan. 299, 304, 160 P.3d 471 (2007). Thus, Walker's sentence in 21 CR 1907 is 124 months.

The Kansas Legislature has adopted a sentencing guidelines grid for both nondrug and drug crimes. See K.S.A. 21-6804; K.S.A. 21-6805. The sentencing guidelines grid establishes a presumptive sentencing range depending on the severity level of the crime and a defendant's criminal history. A district judge must impose the presumptive sentence in the applicable sentencing guidelines grid "unless the judge finds substantial and compelling reasons to impose a departure sentence. If the sentencing judge departs from

5

the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." K.S.A. 21-6815(a).

For the purposes of 21 CR 1907, the district court found Walker fell into criminal history category A. The district also found that "the primary crime that controls the base sentence is Count 2, possession of an opiate within 1,000 feet of a school." Walker's crime of conviction is classified as a level 2 drug felony.

Therefore, based on Walker's criminal history, and the severity level of the crime, Walker's presumptive sentence under the Kansas sentencing guidelines drug grid fell in box 2A. The sentencing range for box 2A includes the aggravated number of 144 months, the standard number of 136 months, and the low number of 130 months. See K.S.A. 21-6805. The sentence of 124 months pronounced from the bench did not fall within the presumptive sentencing range provided by Kansas law. To order a sentence of 124 months, the district court would have needed to utilize a durational departure, which it did not do. K.S.A. 21-6815(a). It appears that the district court may have intended to sentence Walker to 144 months, because the district judge stated, "I sentence the defendant to the high number term of 124 months in the Department of Corrections." The high number in grid box 2A is 144 months. But we are bound to accept Walker's sentence as pronounced from the bench. *Abasolo,* 284 Kan. at 304.

The State concedes that the sentencing journal entry did not reflect the sentence pronounced from the bench. It is well-established that "a journal entry is not the controlling pronouncement of a sentence"; instead, "'a criminal sentence is effective upon pronouncement from the bench.'" *State v. Redick*, 317 Kan. 146, 147, 526 P.3d 672 (2023).

We find that the 124-month sentence pronounced from the bench is the controlling sentence in this case. And because that sentence did not fall within the presumptive

6

sentencing ranges contained within the Kansas sentencing guidelines drug grid, and the district court did not grant a departure, the sentence was illegal. K.S.A. 22-3504(c)(1). Accordingly, we vacate the sentencing order in 21 CR 1907 and remand for resentencing.

DID THE DISTRICT COURT ERR BY FAILING TO AWARD JAIL CREDIT IN 21 CR 1907, 21 CR 1908, AND 21 CR 1916?

Walker next argues that the district court failed to award the jail credit he is owed in 21 CR 1907, 21 CR 1908, and 21 CR 1916.

*Preservation*

Walker acknowledges that he did not raise his jail credit challenge in district court. But we may address the issue for the first time on appeal because Walker is entitled to receive the benefit of our "longstanding rule that in a direct appeal, a defendant will receive the benefit of any change in the law that occurs while the direct appeal is pending." *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019). While Walker's appeal was pending, the Kansas Supreme Court decided *State v. Ervin*, 320 Kan. 287, which is determinative of Walker's jail credit issue on appeal.

Moreover, we may also reach this issue by applying an exception to the general rule that an issue must be raised in the district court in order to preserve it for appeal. In considering whether Ervin was entitled to additional jail credit, our Supreme Court first found that "an exception to the preservation requirement applies because Ervin presents a question of law involving interpretation of a statute that is presented on admitted facts." *Ervin*, 320 Kan. at 306. Here, we find that the same preservation exception permits us to consider Walker's jail credit issue for the first time on appeal.

7

*Standard of Review*

The right to jail time credit in Kansas is set forth in K.S.A. 21-6615(a). Statutory interpretation presents a question of law over which this court conducts unlimited review. See *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

*Walker is entitled to additional jail credit.*

Walker claims that he is entitled to additional jail credit in three cases:  21 CR 1907, 21 CR 1908, and 21 CR 1916. According to Walker's calculations, he is owed 20 days in 19 CR 1907; 379 days in 19 CR 1908; and 379 days in 19 CR 1916. The State responds that Walker is not entitled to duplicative credit he received in other cases.

Jail time credit is governed by K.S.A. 21-6615(a)(1). The first step of our jail credit analysis is to determine which version of this statute applies to the calculation of jail credit in each case challenged by Walker. "Kansas courts have long held that ' the fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.'" *State v. Mitchell*, 66 Kan. App. 2d 196, 203, 579 P.3d 970, 975 (2025), *rev. granted* 321 Kan. 793 (2026) (quoting *State v. McLinn*, 307 Kan. 307, 337, 409 P.3d 1 (2018).

Walker's offenses in 21 CR 1908 and 21 CR 1916 were committed in April 2021, and 21 CR 1907 in July 2021. If Walker's jail credit is controlled by K.S.A. 2020 Supp. 21-6615(a) and 2021 Supp. 21-6615(a), both versions state:

> "In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically

8

designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case." K.S.A. 2020 Supp. 21-6615(a); 2021 Supp. 21-6615(a).

Walker was sentenced on August 30, 2024. The jail credit statute was significantly amended in 2024. K.S.A. 2024 Supp. 21-6615(a) states:

"(a)(1) In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time that the defendant has spent incarcerated pending the disposition of the defendant's case. The defendant shall be entitled to have credit applied for each day spent incarcerated. In recording the commencing date of such sentence the date as specifically set forth by the court shall be used as the date of sentence and all good time allowances as are authorized by the secretary of corrections are to be allowed on such sentence from such date as though the defendant were actually incarcerated in any of the institutions of the state correctional system.

"(2) When computing the defendant's sentence, the following shall not be considered time spent incarcerated pending disposition of the defendant's case:

(A) Any time awarded as credit in another case when consecutive sentences are imposed on a defendant; or

(B) any time spent incarcerated in another jurisdiction if no hold has been issued in such jurisdiction for the case being sentenced." K.S.A. 2024 Supp. 21-6615(a).

As a panel of our court recently noted, "Before the legislature amended Kansas' jail-credit statute in 2024, the language of that statute had remained materially unchanged for many years." *Mitchell*, 66 Kan. App. 2d at 200. The *Mitchell* panel noted the significant changes that occurred with the enactment of K.S.A. 2024 Supp. 21-6615(a). The panel noted that the 2024 amendments "codified the holding" in *State v. Hopkins,*

9

317 Kan. 652, 537 P.3d 845 (2023). *Mitchell,* 66 Kan. App. 2d at 202. In *Hopkins,* the Kansas Supreme Court held, "[A] defendant shall be awarded jail time credit for all time spent in custody pending the disposition of his or her case." 317 Kan. at 657. The *Mitchell* panel noted that the 2024 amendments to K.S.A. 21-6615(a) "clarified that a person does not receive duplicative jail credit toward a consecutive sentence if they already received credit toward a sentence they are serving consecutively and limited the situations where a person could receive credit toward their sentence for time spent incarcerated in another jurisdiction." *Mitchell,* 66 Kan. App. 2d at 202. The 2024 amendments took effect when published in the Kansas Register on May 23, 2024. See L. 2024, ch. 96, § 13.

In 2025, the Kansas Supreme Court issued its decision in *Ervin*, 320 Kan. 287. In *Ervin,* the court interpreted K.S.A. 2022 Supp. 21-6615(a), or the pre-2024 version of K.S.A. 21-6615(a), to require "the district judge to award one day of credit for each day that Ervin was incarcerated pending disposition of this case regardless of whether he received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12.

Under *Ervin,* if the earlier version of the jail credit statute applies, a defendant should receive jail credit in consecutive cases. If K.S.A. 2024 Supp. 21-6615(a) applies, duplicative credit cannot be awarded in consecutive cases. The *Ervin* court declined to reach the issue of retroactivity as it pertains to the 2024 amendments. "The State does not ask us to apply the 2024 amendments retroactively, and we leave for another day any questions about whether the amendments are retroactive or about application of the amended statute." 320 Kan. at 311.

We are left then with the longstanding rule that a court must sentence a defendant in accordance with the sentencing provisions in effect when the defendant committed the crime. And as the panel in *Mitchell* pointed out, "courts generally presume that 'a statute

operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively.'" *Mitchell,* 66 Kan. App. 2d at 204; see also *State v. Juiliano*, 315 Kan. 76, 80, 504 P.3d 399 (2022). We acknowledge the State's position that there are exceptions to this general rule, such as when determining prior offenses with regard to driving under the influence (DUI) convictions. For the limited category of DUI offenses, the Kansas Supreme Court has determined that the Kansas Legislature intended the law in effect at sentencing to apply. See *State v. Reese*, 300 Kan. 650, 654-59, 333 P.3d 149 (2014). But the rationale behind this limited exception is that DUI is a crime that follows a progressive sentencing scheme, and prior convictions are determined as a part of sentencing. "We first note that K.S.A. 2011 Supp. 8-1567(j) refers to 'determining whether a conviction is a first, second, third, fourth or subsequent conviction *in sentencing* under this section.' (Emphasis added.) That phrasing is consistent with the concept of establishing the prior convictions at the time of sentencing." *Reese*, 300 Kan. at 657. *Reese* has no bearing on the retroactivity of the Kansas jail credit statute because it offers only a rule that applies specifically within the context of a DUI conviction and does not any general principle. Walker has failed to provide any authority that convinces us that his case falls into any recognized exception to the general rule that a court must sentence a defendant in accordance with the sentencing provisions in effect when the defendant committed the crime.

We also note that Walker has cited *State v. King*, 14 Kan. App. 2d 478, 480-82, 793 P.3d 1267 (1990), for the proposition that the Kansas Legislature established its intent to have the version of the jail credit statute in effect at sentencing apply. King appealed the denial of jail credit within his probation revocation hearing. The court considered the retroactivity of K.S.A. 1989 Supp. 21-4614a, which had recently made jail credit mandatory within probation revocation proceedings. The panel found that the jail credit changes should operate retroactively in King's case, even though the amendments to the statute went into effect after King committed his original crimes. The panel reasoned that since the amendment stated that the change would apply in "any" case

11

where the district court revoked probation, the modification could operate retroactively. 14 Kan. App. 2d at 480.

Walker is correct that *King* represents an exception to the general rule that a defendant must be sentenced under the law in effect when the defendant committed the crime. But Walker's argument that *King* requires us to find K.S.A. 2024 Supp. 21-6615(a) operates retroactively is without merit. The State made the same argument in *Mitchell,* and in dismissing that argument, the panel pointed out, "the 2024 amendment recast the general rule governing jail credit—not a limited application tied only to probation revocations—and overruled a judicial reading of that general rule. In that circumstance, we may fairly conclude the legislature would have explicitly declared the amendment to be retroactive if it intended the change to apply to cases pending before the amendment's effective date." 66 Kan. App. 2d at 206.

We reach the same conclusion here as in *Mitchell*—that there is no indication the Legislature intended the 2024 amendments to the jail credit statute to operate retroactively.

Finally, we note the State's argument that *Ervin* was wrongly decided. "Our court must follow Kansas Supreme Court precedents unless that court has given some indication that it is moving in a different direction." *State v. Gibson*, 57 Kan. App. 2d 610, 616, 457 P.3d 207 (2019). The court has given no such indication; in fact, it recently acknowledged the State's repeated attacks on *Ervin* through a decision in *State v. Zongker*, No. 128,903, 2026 WL 911953 (Kan. App. 2026). "The State's position on *Ervin* is no secret. It has argued in multiple cases that the decision misreads the text, creates bad incentives, and conflicts with legislative action." 2026 WL 911953, at *2. In *Zongker*, the court once again rejected the State's position, finding, "The State's arguments for overruling *Ervin* are unpersuasive. The amount of additional jail credit Zongker is entitled to is not in dispute. We remand with directions to enter an amended

12

journal entry crediting Zongker with all days spent incarcerated pending disposition of this case, including any days for which he also received credit in the prior case." 2026 WL 911953, at *5. Because the court has indicated it does not intend to depart from the holdings in *Ervin,* we are required to follow the same.

Having established that the jail credit statute in effect at the time of Walker's offenses applies, we find that because Walker's offenses were committed in April 2021, and July 2021, the calculation of his jail credit is controlled by K.S.A. 2020 Supp. 21-6615(a) and K.S.A. 2021 Supp. 21-6615(a). Because these versions of the statute pre-dated the 2024 amendments, the principles from *Ervin* must be considered. Under *Ervin,* Walker is entitled to "one day of credit for each day that [he] was incarcerated pending disposition of this case regardless of whether he received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12.

We pause to note that the district court likely determined jail credit in accordance with what it believed to be the law at that time. *State v. Feikert*, 64 Kan. App. 2d 503, 510, 553 P.3d 344 (2024), was decided shortly before Walker's sentencing. The *Feikert* panel held that "a defendant is not entitled to duplicative jail credit toward consecutive prison sentences imposed in multiple cases." 64 Kan. App. 2d at 510. The district court did not have the opportunity to determine jail credit under *Ervin* as that case was not decided until Walker's case was on appeal in 2025. Nonetheless, the district court must now determine jail credit applying *Ervin*.

Accordingly, we vacate the jail credit portion of the sentencing journal entries in 21 CR 1907, 21 CR 1908, and 21 CR 1916 and remand for the district court to reassess its determination of jail credit in accordance with *Ervin*. We acknowledge Walker's additional issue with regard to the actual calculation of the jail credit, including Walker's argument that he is entitled to an additional 20 days in 19 CR 1907, and so on remand we

13

also direct the district court to review the dates and calculation of all jail credit, while applying *Ervin.*

## DID THE DISTRICT COURT ERR BY IMPOSING A BFAW FEE IN THE SENTENCING JOURNAL ENTRY?

*Preservation*

Walker did not object at sentencing to the BFAW fee, but he had no opportunity to do so. The BFAW fee appeared only in the journal entry for 21 CR 959 and the fee was not addressed by the court at sentencing. "Failing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made." K.S.A. 60-246; *State v. Gonzalez*, 307 Kan. 575, 591, 412 P.3d 968 (2018).

*Standard of Review*

Court costs are governed by K.S.A. 22-3801(a), and K.S.A. 28-172a(d) authorizes various docket fees. We examine these statutes to determine whether the district court's order for payment of a BFAW fee was lawful. Statutory interpretation is a question of law over which appellate courts have unlimited review. *State v. Daniels*, 319 Kan. at 342.

*The district court erred by ordering a BFAW fee in the sentencing journal entry.*

Under K.S.A. 22-3801(a), "[i]f the defendant in a criminal case is convicted, the court costs shall be taxed against the defendant and shall be a judgment against the defendant which may be enforced as judgments for payment of money in civil cases." The authority for various docket fees assessed in criminal proceedings is found in K.S.A. 28-172a. Specifically, K.S.A. 28-172a(d) addresses certain fees to be dispersed from the mandatory docket fee in K.S.A. 28-172a(a). K.S.A. 28-172a(d) also states:

"All other fees and expenses to be assessed as additional court costs shall be approved by the court, unless specifically fixed by statute. Additional fees shall include, but are not limited to, fees for Kansas bureau of investigation forensic or laboratory analyses, fees for detention facility processing pursuant to K.S.A. 12-16,119, and amendments thereto, fees for the sexual assault evidence collection kit, fees for conducting an examination of a sexual assault victim, fees for service of process outside the state, witness fees, fees for transcripts and depositions, costs from other courts, doctors' fees and examination and evaluation fees. No sheriff in this state shall charge any district court of this state a fee or mileage for serving any paper or process."

K.S.A. 28-172a(d) establishes the rule that other than certain fees to be dispensed from the docket fee, all other fees and expenses must be approved by the court unless specifically fixed by statute. And the Kansas Supreme Court has confirmed that any costs not fixed by statute "need to be approved by the district court before they are taxed." *State v. Alvarez*, 309 Kan. at 208. The court in *Alvarez* also held that "[t]he language in K.S.A. 2017 Supp. 28-172a indicates that docket fees and other costs that are specifically fixed by statute must be taxed against the defendant, but that other fees to be assessed as court costs need to be approved by the district court before they are taxed . . . those [other] expenses must first bear a reasonable relation to the prosecution and then be approved by the district court before they are taxed as court costs." *Alvarez*, 309 Kan. at 208.

Here, the fee at issue was a bond forfeiture alias warrant fee, otherwise known as a BFAW fee, in the amount of $482.50. It does not appear that this fee is "fixed" by any statute and therefore requires the approval of the court. K.S.A. 28-172a(d). The BFAW fee was not pronounced from the bench; instead, it was included in the sentencing journal entry signed by the court. While the parties disagree on whether the fee required pronouncement from the bench, we need not reach that issue because there was no finding from the court that the fee bore a "reasonable relation to the prosecution. . . ."

*Alvarez*, 309 Kan. at 208. The State concedes that the fee was ordered in error, and that remand is the appropriate remedy.

Therefore, we vacate the BFAW fee of $482.50 in 21 CR 959 and remand to the district court with directions to consider on the record whether the fee bears "a reasonable relation to the prosecution. . . ." 309 Kan. at 208.

For clarity, we summarize our holdings across Walker's five cases. First, we vacate the sentencing order in 21 CR 1907 and remand for resentencing with directions. Second, we vacate the district court's jail credit determinations in 21 CR 1907, 21 CR 1908, and 21 CR 1916 and remand with directions. Finally, we vacate the BFAW fee of $482.50 in 21 CR 959 and remand to the district court with directions. Walker makes no argument on appeal as to any error that occurred in 22 CR 439, and we therefore make no findings regarding that case.

Vacated and remanded with directions.